A06A1732. LIVE OAK CONSULTING, INC. v. DEPARTMENT OF COMMUNITY HEALTH et al.
(637 SE2d 455)

BLACKBURN, Presiding Judge.

In this declaratory judgment action, Live Oak Consulting, Inc. (Live Oak) appeals the grant of the Department of Community Health's (Department) motion for a protective order barring further discovery. Live Oak contends that the trial court erred in (i) deciding this matter pursuant to the Administrative Procedure Act (APA),[1] and (ii) finding that sovereign immunity protects state agencies in declaratory judgment actions. Live Oak also contends that the trial court erred in (iii) finding that the Department's rules regarding health benefits cannot be challenged whatsoever. For the reasons set forth below, we affirm in part, vacate in part, and remand the case.

OCGA § 9-11-26 (c) authorizes the trial court in which an action is pending, "[u]pon motion by a party or by the person from whom discovery is sought and for good cause shown, . . . [to] make any order

---

[1] OCGA § 50-13-1 et seq.

which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and the exercise of that discretion is reviewed on appeal for abuse." (Citation omitted.) *Alexander Properties Group v. Doe.*[2] See also *Gropper v. STO Corp.*[3]

So viewed, the record shows that in order to provide public school teachers and other public school employees with a health insurance plan, the General Assembly enacted OCGA § 20-2-880 et seq. and OCGA § 20-2-910 et seq. In 1999, the General Assembly created the Department of Community Health and authorized the Department to establish and administer the state health insurance benefit plan (Health Plan) for both public school teachers and other public school employees.[4] To help fund the Health Plan, the Department established regulations requiring local school systems participating in the Health Plan, as employers, to contribute different dollar amounts for each employee according to whether the employee is a certificated public school teacher as defined by OCGA § 20-2-880 (4)[5] or a public school employee as defined by OCGA § 20-2-910 (3).[6] See Ga. Comp. R. & Regs. r. 111-4-1-.02 (1) (d) (2006). Specifically, "[t]he local school system employer contribution rate for the public school employee health insurance fund shall be a dollar amount per actively enrolled public school employee." Ga. Comp. R. & Regs. r. 111-4-1-.02 (1) (d) 3. (2006). "The employer contribution rate for the teachers health insurance fund shall be a percentage of the salary approved by the State Board of Education under the Quality Basic Education Act for persons holding 'Certificated Positions' or in a 'Certificated Capacity.'

---

[2] *Alexander Properties Group v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006).

[3] *Gropper v. STO Corp.*, 276 Ga. App. 272, 275 (1) (623 SE2d 175) (2005).

[4] See OCGA §§ 31-5A-1; 31-5A-4; 20-2-881 (a); 20-2-911 (a).

[5] OCGA § 20-2-880 (4) in part provides:
"Public school teacher," "teacher," and "employee" mean any person employed not less than half time in a professionally certificated capacity or position in the public school system of this state. "Public school teacher," "teacher," and "employee" also mean librarians and other personnel employed by regional and county libraries or the high school program of Georgia Military College. "Public school teacher," "teacher," and "employee" also mean any professionally certificated person who has acquired ten years or more of creditable service and who is being paid retirement benefits by the Teachers Retirement System of Georgia, Chapter 3 of Title 47, or by any other public school teacher system retirement system in this state.

[6] OCGA § 20-2-910 (3) in part provides:
"Public school employee" means an "employee" as defined in paragraph (20) of Code Section 47-4-2 [which includes, but is not limited to, school bus drivers, school lunchroom personnel, school maintenance personnel, and school custodial personnel]. "Public school employee" also means classroom aides, paraprofessionals, and noncertified administrative and clerical personnel.

The monthly employer contribution shall be a percentage of state based salaries." Ga. Comp. R. & Regs. r. 111-4-1-.02 (1) (d) 4. (2006).

In an effort to assist benefit coordinators and personnel representatives of school systems in explaining various aspects of the Health Plan to their employees, the Department began publishing a newsletter, entitled "Partners," which it sent to every school system in the state. The September 2000 issue of this newsletter included an explanation of the method of accounting for school system personnel with regard to the Health Plan, which provided:

> If you help administer the Plan for a local school system, be sure that you account for service personnel correctly. Since employer contribution amounts are different for each group, it's important to make the proper distinction. Even if an employee holds a teaching certificate, he or she also *must be employed in a certificated position* before you account for them as a certificated employee for monthly billing purposes. If they are not in a certificated position, then report them as a non-certificated employee.

Live Oak is a company that provides consulting services to various Georgia school districts regarding contributions to the Department-administered Health Plan for public school teachers and employees. In 2004, Live Oak was retained by the Forsyth County School District (Forsyth) to assist in determining the dollar amounts Forsyth was required to contribute to the Health Plan. The contract between Live Oak and Forsyth stated that the fees for Live Oak's consulting services would consist of 50 percent of any dollar amount Forsyth was able to save as a result of Live Oak's advice. Relying on the information regarding Health Plan contributions contained in the Department's September 2000 newsletter, Live Oak advised Forsyth that it was required to contribute a percentage of the teacher's salary only for those certificated employees who also held certificated positions. Forsyth followed this advice and contributed to the Health Plan accordingly. As a result, Forsyth saved money and Live Oak received its contractual fees.

However, later that same year, the Department informed the state school systems that, according to advice provided by the Attorney General's office, the information regarding contributions for school system personnel contained in the Department's September 2000 newsletter was incorrect and conflicted with the Health Plan's enabling legislation. Specifically, the Department informed the school systems that the percentage of teacher's salary contributions was, in fact, required for all certificated employees regardless of whether or not such employees were actually employed in a certificated position.

Based on this new information, many school systems, including Forsyth, were informed that they had been under-contributing to the Health Plan.

In light of this apparent change in the Department's interpretation of its rules concerning contributions to the Health Plan, Live Oak feared that it would no longer receive fees pursuant to its contract with Forsyth and that Forsyth would seek reimbursement for the fees previously paid in order to make up for its insufficient past contributions. Consequently, Live Oak filed a declaratory judgment action in the Superior Court of Forsyth County, naming Forsyth and the Department as defendants. In that action, Live Oak requested that the court declare that the Department's recent interpretation of its rules concerning contributions to the Health Plan was invalid or, in the alternative, that the Department be estopped from applying its new interpretation retroactively. Live Oak also requested that the court declare that Live Oak was entitled to all fees due under its contract with Forsyth. The Department answered and claimed, among other things, that the doctrine of sovereign immunity barred its inclusion in the action. After being served with Live Oak's various discovery requests, the Department filed a motion for protective order, contending that the superior court lacked jurisdiction in light of the Department's sovereign immunity and thus discovery should be stayed. Live Oak responded and, after a hearing, the trial court granted the Department's motion for protective order to stay discovery, finding that the General Assembly had not waived sovereign immunity here. This discretionary appeal followed.

1. In its first two enumerations of error, Live Oak contends that the trial court erred in granting the Department's motion for protective order by deciding issues regarding sovereign immunity that were not before it, by deciding the matter pursuant to OCGA § 50-13-10 of the APA, and by finding that the doctrine of sovereign immunity is applicable to protect state agencies in declaratory judgment actions. These contentions are without merit.

In its motion for protective order, the Department explicitly based its argument that discovery should be stayed on the ground that sovereign immunity precluded the trial court's jurisdiction over this matter. Contrary to Live Oak's assertion, the issue of sovereign immunity was therefore before the trial court. Moreover, "[j]urisdiction of a court to afford the relief sought is a matter which should be decided preliminarily, at the outset." (Punctuation omitted.) *Dept. of Transp. v. Dupree.*[7] "Thus, when a court either has or lacks subject

---

[7] *Dept. of Transp. v. Dupree,* 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002).

matter jurisdiction, despite any conflict in the facts, the trial court should as a threshold issue determine its jurisdiction." Id. at 671-672 (1).

Furthermore, the trial court was correct in finding that the APA governed this matter. In fact, given that Live Oak's petition for declaratory judgment specifically seeks to invalidate the Department's current interpretation of its rule relating to public school employers' contributions to the Health Plan, the doctrine of sovereign immunity required the trial court to address this matter pursuant to OCGA § 50-13-10 of the APA. In no uncertain terms "OCGA § 50-13-10 governs declaratory judgment regarding the validity of administrative rules." *Dept. of Transp. v. Peach Hill Properties.*[8] Subsection (a) of the statute reflects this control over such actions and provides:

> The validity of any rule . . . may be determined in an action for declaratory judgment when it is alleged that the rule . . . or its threatened application interferes with or impairs the legal rights of the petitioner. A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule . . . in question.

In addition, subsection (b) prescribes the procedures for pursuing such an action, providing in part:

> The agency shall be made a party to the action and a copy of the petition shall be served on the Attorney General. The action shall be brought in the Superior Court of Fulton County or in the superior court of the county of residence of the petitioner. When the petitioner is a corporation, the action may be brought in the Superior Court of Fulton County or in the superior court of the county where the petitioner maintains its principal place of doing business in this state.

"It is thus clear that the state has prescribed the terms and conditions on which it consents to be sued based upon the alleged invalidity or unconstitutionality of the rules and regulations of its departments and agencies." *State Bd. of Ed. v. Drury.*[9] Consequently, any such challenge must be in accordance with OCGA § 50-13-10 of the APA.

Nevertheless, Live Oak argues that the "may be determined" language in OCGA § 50-13-10 (a) is evidence that the statute is but

---

[8] *Dept. of Transp. v. Peach Hill Properties,* 280 Ga. 624, 625 (1) (631 SE2d 660) (2006).
[9] *State Bd. of Ed. v. Drury,* 263 Ga. 429, 432 (1) (437 SE2d 290) (1993).

one of several methods by which to challenge the validity of an agency rule and that OCGA § 9-4-7 (c) of the Declaratory Judgment Act,[10] as well as case authority, impliedly contemplates the legitimacy of challenges to agency rules outside the purview of the APA. We disagree. Such arguments are belied by the fact that "[u]nder the doctrine of sovereign immunity, the state cannot be sued without its consent." *State Bd. of Ed. v. Drury*, supra, 263 Ga. at 430 (1). Indeed, "Art. [I], Sec. [II], Par. [IX] (e), Constitution of Georgia 1983, provides that the State's immunity 'can only be waived by an Act of the General Assembly which *specifically* provides that sovereign immunity is thereby waived and the extent of such waiver.'" (Emphasis supplied.) *City of Atlanta v. Barnes*.[11]

Here, it is only pursuant to OCGA § 50-13-10 of the APA that the state has specifically consented to be sued and has explicitly waived its sovereign immunity as to declaratory judgment actions in which the rules of its agencies are challenged. See *State Bd. of Ed. v. Drury*, supra, 263 Ga. at 432 (1); *Irvin v. Woodliff*.[12] Thus, the trial court did not err in finding that the APA governed this action and that sovereign immunity is applicable to protect state agencies in declaratory judgment actions, barring any further discovery here. Accordingly, we affirm the trial court's grant of the Department's motion for protective order.

2. In light of our ruling in Division 1 that declaratory judgment actions challenging the validity of agency rules are governed by OCGA § 50-13-10 and given the fact that Live Oak did not comply with that statute in filing its action, the trial court was without the jurisdiction necessary to take any action beyond granting the Department's protective order staying discovery, including ruling that the Department's rule regarding the Health Plan did not constitute a rule that could be challenged even pursuant to the APA. See *Blue Cross &c. of Ga. v. Deal*;[13] *Miller v. Merck & Co.*;[14] *Synthetic Indus. v.*

---

[10] OCGA § 9-4-7 (c) provides: "If a statute of the state, any order or regulation of any administrative body of the state, or any franchise granted by the state is alleged to be unconstitutional, the Attorney General of the state shall be served with a copy of the proceeding and shall be entitled to be heard." Given that OCGA § 50-13-10 (c) provides for the procedures of the Declaratory Judgment Act to be followed when challenging the validity of an agency rule under the APA, OCGA § 9-4-7 (c) is merely duplicative of the procedural requirement for serving the Attorney General in such actions. In addition, OCGA § 9-4-7 (c) also addresses service upon the Attorney General with regard to constitutional challenges to statutes, orders, and franchises.

[11] *City of Atlanta v. Barnes*, 276 Ga. 449, 451-452 (3), n. 1 (578 SE2d 110) (2003), superseded by statute on other grounds, *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22 (608 SE2d 611) (2005).

[12] *Irvin v. Woodliff*, 125 Ga. App. 214, 216 (1) (186 SE2d 792) (1971).

[13] *Blue Cross &c. of Ga. v. Deal*, 244 Ga. App. 700, 707 (3) (536 SE2d 590) (2000).

[14] *Miller v. Merck & Co.*, 199 Ga. App. 722, 723 (405 SE2d 761) (1991).

*Camp.*[15] We thus vacate the trial court's ruling that the Department's rule could not be challenged and remand the case for further action consistent with this opinion.[16]

*Judgment affirmed in part and vacated in part, and case remanded. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 5, 2006.

*Balch & Bingham, Michael J. Bowers, T. Joshua R. Archer, Joshua B. Belinfante,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Evan R. Kaplan, Mark J. Cicero, Assistant Attorneys General, Harbin & Hartley, Phillip L. Hartley,* for appellees.

---

[15] *Synthetic Indus. v. Camp,* 196 Ga. App. 637 (396 SE2d 518) (1990).

[16] While the Department's motion to dismiss is currently pending in the trial court, we note that pursuant to Art. VI, Sec. I, Par. VIII, Constitution of Georgia 1983, "[a]ny court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere." See also Uniform Superior Court Rule 19.1 (A).