## A11A2087. GEORGIA DEPARTMENT OF COMMUNITY HEALTH et al. v. DATA INQUIRY, LLC.

(722 SE2d 403)

ELLINGTON, Chief Judge.

The Georgia Department of Community Health ("the Department") appeals from an order of the Superior Court of Fulton County that denied its motion to dismiss a complaint filed by Data Inquiry, LLC. According to the Department, the trial court erred in finding that Data Inquiry's claims were not barred by sovereign immunity.[1] For the following reasons, we agree and reverse.

"On appeal, this Court reviews the denial of a motion to dismiss de novo. However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in [the plaintiff's] favor." (Citations, punctuation and footnote omitted.) *Liu v. Boyd*, 294 Ga. App. 224 (668 SE2d 843) (2008).

So viewed, the record shows the following facts. In October 2007, Data Inquiry began negotiating a "Professional Services Agreement" ("the proposed agreement") with Grace Lewis, a senior assistant attorney general for the State of Georgia, who was representing the Department. Under the proposed agreement, which was drafted by a Data Inquiry manager, Brian Carne, Data Inquiry was to provide various computer-related services, including collecting electronic data, at the offices of a third party that was involved in a civil suit with the Department ("the third party"). The proposed agreement provided that, "[s]ubject to [Data Inquiry] and Client approval, all services shall be rendered at such times and places as Client may request, and for a mutually agreeable period of time." It also stated as follows:

> This contract shall become effective upon execution by both Client and [Data Inquiry], but only after receipt by [Data Inquiry] of any required retainer[.] . . . Failure to pay any required retainer will immediately render this contract null and void[.] . . . Client agrees to furnish [Data Inquiry]

---

[1] This order is directly appealable pursuant to the collateral order doctrine.
For the collateral order doctrine to apply, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and is effectively lost if a case is erroneously permitted to go to trial. [Therefore,] an order that denies a motion to dismiss, based on a conclusive determination that the State (or a state officer or employee) is not immune from suit on the basis of sovereign immunity, meets these criteria.
(Citations, punctuation and footnotes omitted.) *Bd. of Regents &c. of Ga. v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009).

forthwith a retainer fee of $15,000 against which any billable services as outlined herein are to be deducted[.]

In addition, the proposed agreement stated that

[t]his Contract, which each party acknowledges receipt of a complete copy, represents the entire agreement between [Data Inquiry] and Client, and it supersedes all prior written or oral communications or agreements between the parties. . . . There are no collateral agreements, stipulations, covenants, promises, inducements, or undertakings not expressed herein. . . . [This Contract] may not be modified except by a written document agreed to and signed by both [Data Inquiry] and Client that clearly indicates that such secondary written document is intended to modify this Contract in some specified manner.

Further, under the proposed agreement, before any Data Inquiry employee performed work under the agreement, he or she would have to sign a document entitled "Declaration and Agreement to be Bound," in which he or she expressly agreed to abide by a separate document, a "Consent Protective Order" ("the protective order"), which, in turn, was to be executed by the Department and the third party and which contained no references to Data Inquiry.

On November 12, 2007, Data Inquiry employees began working pursuant to the proposed agreement, even though the Department had not yet sent it a signed copy of the proposed agreement or the $15,000 retainer required thereunder. Upon completing its work, Data Inquiry sent the Department an invoice for $25,066.96 for services provided and expenses incurred.

When the Department refused to pay the invoice, Data Inquiry filed a complaint against it for the alternative claims of breach of contract, unjust enrichment, and quantum meruit. The Department answered and raised the defense that the action was barred by sovereign immunity because it was not based upon a written contract; it also filed a motion to dismiss the complaint based on sovereign immunity and for failure to state a claim. Data Inquiry then filed an amended complaint with the following documents attached: (a) an unsigned copy of the proposed agreement; (b) an unsigned and incomplete draft of the protective order; (c) an unsigned copy of the "Declaration and Agreement to be Bound" to the protective order; and (d) a copy of the invoice from Data Inquiry to the Department for $25,066.96, dated November 25, 2008. In addition, Data Inquiry attached to its response to the Department's motion to dismiss three pages of e-mails between Carne, Lewis, and

the third party. The e-mails were dated November 2 through 12, 2007, and they showed that the protective order was still in the drafting stages and that the Department and the third party were still negotiating its terms.

On April 15, 2011, the trial court denied the Department's motion to dismiss, concluding that the documents presented by Data Inquiry, including the unsigned proposed agreement, the unsigned draft of the protective order, the e-mails, and the invoice, "taken together[,] permit [Data Inquiry's] claims to go forward" under the waiver of sovereign immunity for actions based upon written contracts.

1. On appeal, the Department contends that the trial court erred in finding that Data Inquiry's breach of contract claim is based upon a written contract and, thus, the claim is not barred by sovereign immunity. We agree.

The Georgia Constitution provides that "sovereign immunity extends to the [S]tate and all of its departments and agencies,"[2] and that the State's sovereign immunity can only be waived by a constitutional provision or an Act of the General Assembly that specifically provides for such waiver and the extent thereof. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). One of the Constitution's exceptions to the defense of sovereign immunity is for "any action ex contractu for the breach of any *written* contract now existing or hereafter entered into by the [S]tate or its departments and agencies." (Emphasis supplied.) Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). It is axiomatic that "[t]he party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver." (Citations omitted.) *Bd. of Regents &c. of Ga. v. Doe*, 278 Ga. App. 878, 881 (1) (630 SE2d 85) (2006). Thus, in order to overcome the Department's assertion of sovereign immunity, Data Inquiry has the burden of showing that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract. Id.; *Merk v. DeKalb County*, 226 Ga. App. 191, 191-193 (1) (486 SE2d 66) (1997).

(a) "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "A contract is not complete and enforceable until there is a meeting of the minds as to all essential terms." (Citation and punctuation omitted.) *Harris v.*

---

[2] The Department of Community Health is a state agency entitled to sovereign immunity. See generally *Live Oak Consulting v. Dept. of Community Health*, 281 Ga. App. 791 (637 SE2d 455) (2006).

*Baker*, 287 Ga. App. 814, 816 (652 SE2d 867) (2007).

As shown above, the proposed agreement expressly provides that it would not be effective until executed by both parties and until the Department paid the $15,000 retainer. Data Inquiry specifically admitted in its complaint that, at the time it performed its work, it had not received either a signed copy of the proposed agreement or the retainer. Further, Data Inquiry has failed to show that any person acting on behalf of the Department or the State has ever executed the proposed agreement.

Even so, the trial court concluded that Data Inquiry had met its burden of proving the existence of a valid written contract with the Department, relying upon *Azarat Marketing Group v. Dept. of Administrative Affairs*, 245 Ga. App. 256, 257-258 (1) (537 SE2d 99) (2000). The court's reliance on *Azarat* constitutes error, however, because *Azarat* is clearly distinguishable on the facts from the instant case. In *Azarat*, the plaintiff sued the State for breach of contract, and the State failed to file a timely answer, thereby defaulting on the claim. Id. at 256 (1). Because a defendant in default effectively admits each material allegation of the complaint except as to the amount of damages alleged, the State was deemed to have admitted the existence of a valid contract and the breach thereof. Id. at 257 (1) (b). These admissions, when considered with additional evidence of written documents exchanged between the parties, were sufficient to meet the plaintiff's burden of creating a jury issue as to the existence of a written contract. Id. at 257-258 (1) (b). Consequently, the State was not entitled to summary judgment on the basis of sovereign immunity. Id. at 258 (1) (b), n. 3.

In contrast, the Department in this case did not default on Data Inquiry's complaint and, as such, cannot be deemed to have admitted the complaint's allegations. Thus, the ruling of *Azarat* is inapplicable here and does not relieve Data Inquiry of its burden of producing affirmative evidence to demonstrate that a valid written contract exists in order to establish a waiver of the Department's sovereign immunity. *Bd. of Regents &c. of Ga. v. Doe*, 278 Ga. App. at 881 (1); *Merk v. DeKalb County*, 226 Ga. App. at 191-193 (1).

(b) Even if the undisputed evidence shows that no valid written contract between the parties actually exists, however, a court may still find that a valid written contract has been formed "when there are multiple signed, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract and the individual documents, considered together, include all of the necessary terms of a contract." (Citation omitted.) *Bd. of Regents &c. of Ga. v. Doe*, 278 Ga. App. at 881 (1) (a). In this case, however, it is indisputable that the documents referenced above are not final and signed contemporaneous agreements between the

parties. Therefore, they do not support the trial court's conclusion that Data Inquiry met its burden of showing the existence of a written contract so as to demonstrate a waiver of the Department's sovereign immunity. See *Bd. of Regents &c. of Ga. v. Tyson*, 261 Ga. 368, 369-370 (1) (404 SE2d 557) (1991) (finding that a patient's informed consent form and medical records at a university-run hospital did not contain all of the terms necessary to constitute a written contract between the Board and the patient that would waive the Board's sovereign immunity for a claim that it failed to provide adequate security).

2. The Department also argues that the trial court erred in finding that the unjust enrichment and quantum meruit claims were not barred by sovereign immunity. Because such claims are equitable in nature, and because sovereign immunity bars equitable claims against the State, we agree.

Unjust enrichment is an equitable principle that may be applied when there is no valid written contract between the parties, but the plaintiff has conferred a benefit to the defendant that would result in that party's unjust enrichment unless it compensates the plaintiff. *Cochran v. Ogletree*, 244 Ga. App. 537, 539 (1) (536 SE2d 194) (2000). The theory of quantum meruit is also an equitable principle and is based upon the premise that, "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." OCGA § 9-2-7. See *Ga. Dept. of Transp. v. Fru-Con Constr. Corp.*, 206 Ga. App. 821, 825 (3) (426 SE2d 905) (1992) ("An implied contract is one not created or evidenced by distinct and explicit language, but inferred by law as a matter of reason and justice.") (citation and punctuation omitted).

Although Georgia's Constitution provides for a waiver of the State's sovereign immunity in an action asserting the breach of a written contract, as explained in Division 1, supra, the Constitution does not include a waiver of sovereign immunity for equitable claims against the State. Further, "[t]he General Assembly has enacted no statute waiving sovereign immunity for equity claims against the [S]tate." *Dollar v. Olmstead*, 232 Ga. App. 520, 522 (2) (502 SE2d 472) (1998). It follows that, because both unjust enrichment and quantum meruit are equitable claims, such claims against the State are barred by sovereign immunity. Id.; see *Ga. Emission Testing Co. v. Reheis*, 268 Ga. App. 560, 563 (1) (602 SE2d 153) (2004) (physical precedent only) (An unjust enrichment claim seeking reimbursement from the State is barred by sovereign immunity.); *Merk v. DeKalb County*, 226 Ga. App. at 193 (1) ("[A]n implied contract will not support a waiver of sovereign immunity under the provisions of

the Georgia Constitution[.]'') (citation omitted).[3]

3. The Department argues that the trial court should have dismissed Data Inquiry's claims for attorney fees. Given our conclusions in Divisions 1 and 2, supra, that Data Inquiry's contract and equity claims must be dismissed, it follows that Data Inquiry cannot prevail on its only remaining claims, which are for attorney fees under the terms of the proposed agreement and pursuant to OCGA § 13-1-11 (a) or § 13-6-11. See *Iwan Renovations v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 130-131 (3) (673 SE2d 632) (2009) (Because the trial court erred in finding that the bank could collect on a promissory note, it follows that the court also erred in awarding attorney fees under OCGA § 13-1-11 (a) for the bank's collection efforts as to that note.); *Ellis v. Gallof*, 220 Ga. App. 518, 519 (1) (469 SE2d 288) (1996) ("[P]laintiffs must prevail on their basic cause of action in order to obtain litigation expenses under OCGA § 13-6-11.") (citations and punctuation omitted). Accordingly, those claims must also be dismissed.

*Judgment reversed. Doyle, P. J., and Miller, J., concur.*

DECIDED JANUARY 25, 2012.

*Samuel S. Olens, Attorney General, William W. Banks, Jr., Robin J. Leigh, Assistant Attorneys General*, for appellants.
*Joyce, Thrasher, Kaiser & Liss, Ray S. Smith III*, for appellee.

---

[3] See also *Kyle v. Ga. Lottery Corp.*, 304 Ga. App. 635, 636 (1) (698 SE2d 12) (2010) (physical precedent only) (The defendant was entitled to sovereign immunity from the plaintiffs' claims because there was no written contract between the parties, and no statute authorizes a waiver of sovereign immunity for equitable claims against the State.).