**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A0824. DEKALB COUNTY SCHOOL DISTRICT et al. v. GOLD et al.

DILLARD, Judge.

Elaine Ann Gold and Amy Jacobson Shaye are teachers for the DeKalb County School District. In 2009, the School District suspended its contributions to a tax-sheltered annuity plan, which Gold and Shaye allege was an employee-benefit plan established by the District as an alternative to the federal Social Security system. Gold and Shaye, on behalf of themselves individually and a class of similarly situated teachers (collectively, "Gold"), sued the School District, the Dekalb County Board of Education, and the members of the Board and the School District superintendent in their official capacities (collectively, the "District"), asserting claims for declaratory judgment, money had and received, unjust enrichment, promissory

estoppel, conversion, breach of contract, and breach of the implied covenant of good faith and fair dealing. The District moved to dismiss Gold's complaint for failure to state a claim, arguing that the doctrine of sovereign immunity barred each of Gold's claims. The trial court denied the motion, and the District appeals. We agree with the District that sovereign immunity bars Gold's claims for declaratory judgment, money had and received, unjust enrichment, promissory estoppel, and conversion, and we conclude that the trial court erred in failing to dismiss these claims. We find that the trial court did not, however, err in denying the District's motion to dismiss Gold's claims for breach of contract and the associated implied covenant of good faith and fair dealing. Accordingly, we affirm in part and reverse in part.

Accepting Gold's well-pleaded material allegations as true,[1] the complaint shows that on June 27, 1979, the Board voted to leave the federal Social Security system to pursue an alternative employee-benefits plan. Before voting to leave Social Security, the Board passed a resolution (the "1979 Resolution") which stated, in relevant part, that "in the event of withdrawal from Social Security, funds currently

---

[1] *See Love v. Morehouse College, Inc.*, 287 Ga. App. 743, 743-44 (652 SE2d 624) (2007) (In reviewing a trial court's order dismissing a plaintiff's complaint, "we view all of the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, noting that we are under no obligation to adopt a party's legal conclusions based on these facts.").

budgeted for Social Security shall be used for the support of the alternative plan," and that "before the budget is adopted each year, a determination shall be made as to the amount that would have been required for continued participation in Social Security during the current year." The Board further resolved that the amount required "to continue funding Social Security shall be the amount budgeted to fund the alternative to social security, and that [the Board] will give a two year notice to the employees before reducing or terminating these funding provisions."

In 1983, the Board established a "Tax Sheltered Annuity Plan (Alternative to Social Security)" (the "TSA Plan"), which according to the complaint, demonstrated the Board's intent to provide contributions approximating "that which the Board would be paying pursuant to the Social Security Act of 1934."[2] The TSA Plan provided that it "may be amended or terminated by the Employer at any time," although "[n]o amendment or termination of the [TSA Plan] shall reduce or impair the rights of any Participant or his Beneficiary which have already accrued." Following the establishment of the TSA Plan, it remained the Board's stated policy

---

[2] After voting to leave Social Security, the Board initially contracted with Variable Annuity Life Insurance Company to make payments to be applied such that the School District's employees would "at all times have a 100% vested and non forfeitable interest in accumulated amounts attributable to Employer contributions."

that it "shall give a two-year notice to employees before reducing the funding provisions of the Alternative Plan to Social Security."

At an emergency meeting on July 27, 2009, the Board suspended the School District's payment of contributions to the accounts of employee-participants in the TSA Plan,[3] effective for payroll periods commencing after July 31, 2009. On May 10, 2010, after it came to the Board's attention that it did not provide two year's notice before reducing the funding of the TSA Plan, the Board voted to waive the policy requiring the notice. On June 14, 2010, the Board voted to "eliminate provisions [of the Board's bylaws and policies] that are not part of the TSA Plan itself." As of the filing of the amended complaint in June 2011, the contributions to the TSA Plan had not been restored.

---

[3] The District has stated that, in light of federal regulations governing alternate retirement systems for state and local employees, contributions to the TSA Plan were not suspended for certain School District employees. That not all contributions were suspended is consistent with Gold's amended Class designation, which includes only those employees for whom the School District suspended TSA Plan contributions. We note, however, that for purposes of this appeal neither party relies on federal law or regulations. In particular, Gold has not suggested that federal law or regulations precluded the Board from suspending School District contributions to the TSA Plan for the account of the class members.

The District filed a motion to dismiss Gold's amended complaint on the primary ground that Gold's claims were barred by sovereign immunity. The trial court denied that motion, and the District appeals.[4]

1. Gold's complaint includes claims for declaratory relief, promissory estoppel, conversion, unjust enrichment, and money had and received. The District contends that the trial court erred in failing to dismiss these claims as barred by the doctrine of sovereign immunity. We agree.

In reviewing these arguments, we recognize that a motion to dismiss for failure to state a claim pursuant to OCGA § 9-11-12 (b) (6), as invoked by the District, should not be sustained unless "the allegations of the complaint reveal, with certainty, that the plaintiff would not be entitled to relief under any state of provable facts asserted in support of the complaint."[5] However, the District also argued in its motion that Gold's claims were barred by sovereign immunity and the motion, to that extent, was "based upon the trial court's lack of subject matter jurisdiction, rather than the

---

[4] Although not final, the trial court's order denying the District's motion to dismiss is directly appealable under the collateral-order doctrine. *See Bd. of Regents of the University Sys. of Ga. v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009).

[5] *LaSonde v. Chase Mortgage Co.*, 259 Ga. App. 772, 774 (1) (577 SE2d 822) (2003).

merits of the plaintiff's claim."[6] Accordingly, Gold—the party seeking to benefit from the waiver of sovereign immunity—had the burden of proof to establish waiver.[7] Our review of the trial court's denial of the District's motion to dismiss on sovereign-immunity grounds is *de novo*.[8]

The Board, the School District, the Board's members, and the superintendent[9] enjoy sovereign immunity.[10] Indeed, it is well established that the sovereign can not

---

[6] *Bonner v. Peterson*, 301 Ga. App. 443, 443 (687 SE2d 676) (2009); *see also DeFloria v. Walker*, ___ Ga. App. ___ (___ SE2d ___), 2012 WL 3990914, *2 (September 6, 2012).

[7] *See Bonner*, 301 Ga. App. at 443. If a trial court rules on factual issues necessary to decide its jurisdiction, we review those factual determinations on appeal under the any-evidence test. *Id.* Here, the trial court did not make any factual findings regarding its jurisdiction over this matter.

[8] *See Bd. of Pub. Safety v. Jordan*, 252 Ga. App. 577, 583 (1) (556 SE2d 837) (2001).

[9] The Board's members and the superintendent were sued in their official capacities.

[10] *See Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (noting that suits against public employees in their official capacities are suits against the State and involve sovereign immunity); *Teston v. Collins*, 217 Ga. App. 829, 831 (2) (459 SE2d 452) (1995) (holding that extension of sovereign immunity to the State and all of its departments and agencies includes county-wide school districts); *Thigpen v. McDuffie County Bd. of Educ.*, 255 Ga. 59 (335 SE2d 112) (1985) (holding that a board of education is entitled to sovereign immunity); *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878) (1980) (finding that a suit against school officials in their official capacities is a suit against the State).

be sued in its own courts, or in any other court, without its consent and permission;[11] but it may, if it thinks proper, "waive this privilege, and permit itself to be made a defendant in a suit by individuals . . . ."[12] The permission of the State is voluntary, and it follows, then, that the sovereign is at liberty to "prescribe the terms and conditions on which it consents to be sued . . . ."[13] In this respect, our Constitution provides that, except as specifically provided therein, "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[14] With these guiding principles in mind, we now turn to the District's enumerations of error.

(a) We first consider whether sovereign immunity bars Gold's declaratory-judgment claim. Gold seeks a determination of the District's obligation to fund "the Alternative Plan to Social Security, known as the TSA Plan, for the years 2009, 2010,

---

[11] *See DeFloria*, 2012 WL 3990914 at *2 n. 7.

[12] *State Bd. of Educ. v. Drury*, 263 Ga. 429, 430 (1) (437 SE2d 290) (1993) (punctuation omitted).

[13] *Id.* (punctuation omitted).

[14] Ga. Const. Art I, Sec. II, Para. IX (e).

7

2011, and 2012."[15] She also seeks a declaration that the "freeze" on the District's contribution to the TSA Plan unconstitutionally deprived employees of benefits to which they had a vested right, and that the repeal of the two-year notice requirement unconstitutionally impaired an enforceable contract right owed by the District to Gold and other members of the class.

Our Constitution and statutes do not provide for a blanket waiver of sovereign immunity in declaratory-judgment actions; and this Court has found that "sovereign immunity is applicable to protect state agencies in declaratory judgment actions . . . ."[16] On the other hand, as our Supreme Court recently noted in *Southern LNG, Inc. v. MacGinnitie*,[17] declaratory actions against the State have nevertheless been recognized in certain contexts.[18] Accordingly, we must decide whether, in the context

---

[15] The amended complaint was filed on June 16, 2011.

[16] *Live Oak Consulting, Inc. v. Dep't of Cmty. Health*, 281 Ga. App. 791, 796 (1) (637 SE2d 455) (2006).

[17] 290 Ga. 204 (719 SE2d 473) (2011).

[18] *See id.* at 205 n.1. *See also* OCGA § 50-13-10; *IBM v. Evans*, 265 Ga. 215, 216 (1) (453 SE2d 706) (1995) (finding that sovereign immunity did not protect Department of Administrative Services from injunctive relief); *Drury*, 263 Ga. at 432 (1) (finding that declaratory judgment is authorized as to validity of agency rules); *Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739 (152 SE2d 768) (1966) (involving declaratory-judgment action by property owner against Revenue

of the case *sub judice*, the State has waived its sovereign immunity to Gold's declaratory-judgment claim.

The State's sovereign immunity has been specifically waived by the General Assembly pursuant to OCGA § 50-13-10, which is part of the Administrative Procedures Act.[19] Therein, the state has specifically consented "to be sued and has explicitly waived its sovereign immunity as to declaratory judgment actions in which the rules of its agencies are challenged."[20] Gold does not contend, however, that the State's consent to be sued under OCGA § 50-13-10 applies to the declaratory-judgment action at issue here, which Gold brought under the Declaratory Judgments Act.[21]

---

Commissioner as to ad valorem tax return requirements). In *Southern LNG*, the Supreme Court "decline[d] to address the question whether a declaratory action against the State to determine one's rights with respect to the applicability of a statute is barred by sovereign immunity." 290 Ga. at 206.

[19] OCGA § 50-13-1 *et seq.*

[20] *Live Oak Consulting*, 281 Ga. App. at 796 (1).

[21] OCGA § 9-4-1 *et seq.*; *see Lansford v. Cook*, 252 Ga. 414, 415-416 (314 SE2d 103) (1984) (local board of education is not included within any of the definitions of "agency" contained in the Administrative Procedures Act and is outside its scope); *Drury*, 263 Ga. at 432-433 (1) (437 SE2d 290) (1993) (finding that, pursuant to OCGA § 50-13-10, the state has consented to be sued as to declaratory-judgment actions when the rules and regulations of its departments and agencies are

Gold contends, rather, that her declaratory-judgment claim is sustainable because she sought declaratory relief "correlative to an action arising from a breach of a written contract." In support of her position, Gold relies upon this Court's decision in *Upper Oconee Basin Water Authority v. Jackson County*.[22] In that case, Jackson County sued the Upper Oconee Water Basin Authority, a State subdivision, for declaratory judgment, breach of contract, specific performance, and injunctive relief.[23] The Authority moved to dismiss the action on sovereign-immunity grounds and then appealed the trial court's denial of its motion.[24] At issue in *Upper Oconee* was whether the Authority breached an intergovernmental water-supply contract,[25] and our Constitution has specifically waived the State's sovereign immunity for "any action ex contractu for the breach of any written contract."[26]

challenged, but that "[t]he state has *not* consented to be sued for *damages* based upon the alleged invalidity or unconstitutionality of the rules and regulations promulgated and implemented by its departments and agencies" (punctuation omitted)).

[22] 305 Ga. App. 409 (699 SE2d 605) (2010).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 410-411.

[26] Ga. Const. Art I, Sec. II, Para. IX (e). We consider the trial court's ruling on the District's motion to dismiss Gold's claim for breach of contract in Division 2,

10

Indeed, we noted in *Upper Oconee* that "[i]t is clear that, nomenclature aside, the essence of the County's claim is for breach of the Agreement,"[27] and "the fact that the County has expressly asked for the Authority's obligations under the Agreement to be determined and enforced does not change the essential nature of the claim here."[28] Accordingly, we concluded that the trial court did not err in refusing to dismiss the county's lawsuit on the basis of sovereign immunity.[29]

In this case, the differences between Gold's claim for breach of contract and her claim for declaratory judgment are more than a matter of mere nomenclature. Unlike in *Upper Oconee*, Gold seeks to recover damages for the breach of contract.[30] Her declaratory-judgment action also seeks, *inter alia*, a declaration of the District's budgetary obligations. As Gold explained below, she "seeks clarity to the budgeting

*infra*.

[27] *Upper Oconee*, 305 Ga. App. at 412 (1). The County's breach-of-contract claim alleged that "the Authority breached the Agreement by failing to recalculate the Established Yield," *Id.*, and the county's declaratory-judgment claim sought "[a] declaration that the current Established Yield does not conform to the definition set forth in the Agreement and a determination requiring the Authority to recalculate the Established Yield," *Id.* at 411.

[28] *Id.* at 413 (1).

[29] *Id.*

[30] *Compare Id.* at 413 (1).

11

situation moving forward . . . In other words, there is more at stake than mere liability for a past debt." It is apparent on the face of the complaint that Gold's declaratory-judgment claim seeks relief that goes far beyond an "action ex contractu for the breach of any written contract."[31] Accordingly, Gold cannot rely on *Upper Oconee* to show that the State has waived its sovereign immunity to her declaratory-judgment claim.

In an alternative argument, Gold maintains that sovereign immunity does not bar declaratory relief in suits challenging the constitutionality of legislative acts. Gold refers to numerous cases in which declaratory judgment was sought in conjunction with a request for injunctive relief.[32] In *IBM v. Evans*,[33] our Supreme Court recognized, in light of a long line of authority, that a suit for injunctive relief to

---

[31] Ga. Const. Art I, Sec. II, Para. IX (c).

[32] See *Cobb County v. Ga. Transmission Corp.*, 276 Ga. 367, 367 (1) (578 SE2d 852) (2003) (considering whether petition for declaratory judgment and injunctive relief asserting county ordinance was unconstitutional); *DeKalb County v. Townsend Ass'n*, 243 Ga. 80, 82 (4 b) (252 SE2d 498) (1979) (action against county for declaratory judgment, injunction, and mandamus); *Chilivis v. Nat. Distrib. Co.*, 239 Ga. 651, 654 (1) (238 SE2d 431) (1977) (finding action for declaratory judgment and injunction not barred by the doctrine of sovereign immunity).

[33] 265 Ga. 215 (453 SE2d 706) (1995).

12

restrain an illegal act is an exception to sovereign immunity.[34] Here, in contrast, Gold

is not seeking a declaratory judgment in conjunction with injunctive relief. And while

Gold invokes constitutional principles, she does not present a facial challenge to the

constitutionality of the Board's legislative acts.[35] Rather, she claims that the District

"operated" unconstitutionally in freezing the contributions to the TSA Plan and that

the repeal of the two-year-notice provision unconstitutionally impaired the class

members' contractual rights. An allegation that the State has violated a plaintiff's

constitutional rights is not, in itself, sufficient to avoid the State's sovereign

immunity.[36]

---

[34] *Id.* at 216 (1). Mandamus actions also do not fall within the rule that the State may not be sued without its consent. *See Southern LNG, Inc.*, 290 Ga. at 205.

[35] *See Higdon v. City of Senoia*, 273 Ga. 83, 85 (1) (538 SE2d 39) (2000) (finding that "[a]n action for declaratory judgment is an available remedy to test the constitutionality of a statute in a case where an actual controversy exists with respect thereto" (punctuation omitted)); *McDaniel v. Thomas*, 248 Ga. 632, 633 (I) (285 SE2d 156) (1981) (reviewing declaratory-judgment claim that the State's system of financing public education violated equal-protection provisions of the State constitution, noting that "[j]udicial review of legislative enactments is central to our system of constitutional government and deeply rooted in our history").

[36] *See Miller v. Dep't of Public Safety*, 221 Ga. App. 280, 281 (470 SE2d 773) (1996) (claims for violation of state constitutional rights were based on allegations that the State Patrol officer committed an assault and battery, and there was no waiver of sovereign immunity under the Tort Claims Act).

13

Finally, we note that a "primary purpose of the doctrine of sovereign immunity is the protection of the public purse."[37] Gold and the class members seek damages in the underlying action as well as a declaration as to the District's budgetary obligations, thus claiming monetary compensation for past actions and attempting to bind the District's fiscal discretion going forward. In light of the nature of the relief sought, and given that Gold cannot point to a specific waiver of the State's sovereign immunity as to her declaratory-judgment action, we conclude that, in this specific context, Gold has not shown that she can maintain an action for declaratory relief against the District. It follows, then, that the trial court erred in failing to dismiss Gold's declaratory-judgment claim.[38]

(b) The District further argues that because Gold does not identify a specific waiver of sovereign immunity for her claims of money had and received, unjust enrichment, promissory estoppel, and conversion, these claims must also be dismissed. We agree.

---

[37] *IBM Corp.*, 265 Ga. at 218 (Hunt, C. J., concurring).

[38] *See Drury*, 263 Ga. at 432-33 (1). In light of our conclusion, we need not address the District's argument that Gold's claim for declaratory relief also fails for the independent reason that an action for declaratory judgment does not lie where a simple action for breach of contract provides full and complete relief.

14

The State, as this Court has previously ruled, has not waived its sovereign immunity in actions for money had and received[39] and unjust enrichment.[40] More generally, we have also held that "[t]he General Assembly has enacted no statute waiving sovereign immunity for equity claims against the state."[41] Promissory estoppel is an equitable doctrine,[42] and Gold does not point to any act of the General

[39] *Watts v. City of Dillard*, 294 Ga. App. 861, 864 (1) (670 SE2d 442) (2008) (holding that action against city for money had and received barred by sovereign immunity); *see also Dollar v. Olmstead*, 232 Ga. App. 520, 522 (2) (502 SE2d 472) (1998).

[40] *Ga. Dep't of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 687 (2) (722 SE2d 403) (2012) (finding that the General Assembly has not enacted a statute waiving equitable claims against the State, and claim of unjust enrichment was barred by sovereign immunity); *Dollar*, 232 Ga. App. at 522 (2) (holding that claim against commissioner of Georgia Department of Human Resources for unjust enrichment barred by sovereign immunity). Further, an implied contract "will not support a waiver of sovereign immunity under the provisions of the Georgia Constitution." *Merk v. DeKalb County*, 226 Ga. App. 191, 193 (1) (486 SE2d 66) (1997).

[41] *Dollar*, 232 Ga. App. at 522 (2); *accord Kyle v. Ga. Lottery Corp.*, 304 Ga. App. 635, 636 (698 SE2d 12) (2010) (physical precedent only).

[42] *See Tackett v. Ga. Dep't of Corr.*, 304 Ga. App. 310, 314 (3) (696 SE2d 359) (2010); *D. N. Garner Co. v. Ga. Palm Beach Aluminum Window Corp.*, 233 Ga. App. 252, 256 (2) (504 SE2d 70) (1998) (referencing "Georgia's equity doctrine of promissory estoppel").

Assembly waiving the State's liability for her promissory-estoppel claim, which in this case seeks "damages that have resulted from . . . broken promises . . . ."[43]

Gold contends that she has nevertheless set forth a viable claim of equitable relief because our Supreme Court held in *Quillian v. Employees' Retirement System of Georgia*[44] that the Employees' Retirement System was estopped from denying benefits as they were established prior to Judge Quillian's retirement.[45] The result in *Quillian* is qualified as "[u]nder the unique circumstances of this case,"[46] and the decision makes no mention of sovereign immunity. As a rule, the decisions of our Supreme Court do not "stand for points that were neither raised by the parties nor actually decided in the resulting opinion . . . ."[47] Further, in *Quillian* the Employment Retirement System was estopped from denying benefits, but the Court does not

---

[43] *Compare Dukes v. Bd. of Trustees for the Police Officers Pension Fund*, 280 Ga. 550 (629 SE2d 240) (2006) (in petition for mandamus to compel the board to reinstate its initial decision as to plaintiff's pension, Court considered whether board was estopped by its previous decision).

[44] 259 Ga. 253 (379 SE2d 515) (1989).

[45] *Id.* at 255 (5).

[46] *Id.*

[47] *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007).

16

characterize the underlying action as one for estoppel.[48] Thus, we conclude that Gold cannot rely on *Quillian* to establish that the State has waived its sovereign immunity for actions based on unjust enrichment, money had and received, and promissory estoppel.

As to Gold's conversion claim, she alleges in her complaint that this is an action in tort.[49] Pursuant to the Georgia Tort Claims Act ("GTCA"), the General Assembly has provided for a limited waiver of the State's immunity for tort claims.[50] Gold does not contend on appeal, however, that she has any basis for showing that sovereign immunity for her conversion claim has been waived by the GTCA.[51] And

---

[48] According to our Supreme Court, the widow of Judge Quillian "protests the recalculation of Judge Quillian's pension by the Employees' Retirement System after his retirement." *Quillian*, 259 Ga. at 253. The Court also noted that "[i]n reducing the pension, the Employees' Retirement System pleads a prior miscalculation; Mrs. Quillian, however, insists that the System must be estopped." Id. at 254 (3). Generally, "estoppel is not a cause of action." *Marshall v. King & Morgenstern*, 272 Ga. App. 515, 520 (2) (613 SE2d 7) (2005) (punctuation omitted).

[49] *See* OCGA § 51-10-1.

[50] *See Romano v. Ga. Dep't of Corr.*, 303 Ga. App. 347, 349 (1) (a) (693 SE2d 521) (2010) (finding that prisoner could pursue conversion claim against the Department of Corrections in light of the Georgia Tort Claims Act).

[51] For purposes of the GTCA, "State" is defined as "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does *not include* counties, municipalities,

if the conversion claim can be characterized as equitable, it fails because Gold cannot point to a specific waiver of the State's sovereign immunity in this respect.[52]

In light of the foregoing, we find that the trial court erred in failing to grant the District's motion to dismiss Gold's claims for money had and received, unjust enrichment, promissory estoppel, and conversion.

2. Gold's complaint also includes an action for breach of contract and for the associated implied covenant of good faith and fair dealing. As we have previously noted, our Constitution waives the State's sovereign immunity for "any action ex contractu for the breach of any written contract."[53] Gold alleges that the School District and the Board breached their contractual obligations to the class "by deleting the two-year notice requirement that protected the Class's expectation of enjoyment of uninterrupted contributions to their retirement benefits in the TSA Plan." In

---

*school districts*, other units of local government, hospital authorities, or housing and other local authorities." OCGA § 50-21-22 (5) (emphasis supplied). *See also Chisolm v. Tippens*, 289 Ga. App. 757, 759 (2) (a) (658 SE2d 147) (2008) (holding that trial court properly dismissed tort claims against the school district).

[52] *See Dollar*, 232 Ga. App. at 522 (2).

[53] Ga. Const. Art I, Sec. II, Para. IX (e).

18

addition, the complaint alleges that the School District and the Board breached the implied covenant of good faith and fair dealing inherent to the alleged contract.

The District contends that the trial court erred in failing to dismiss Gold's contract claim because Gold fails to point to any written contract on which the claim rests; the Board's policies and resolutions do not have the full force and effect of law; and the retirement plan in this case was established by the TSA Plan which, under the terms alleged by the complaint, may be amended or terminated by the Board at any time. Gold responds that the 1979 Resolution and the Board's published policies became part of the class member's contract of employment when class members performed services while the 1979 Resolution and policies were in effect.

It is well-established that "a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect . . . ."[54] Thus,

_____

[54] *Withers v. Register,* 246 Ga. 158, 159 (1) (269 SE2d 431) (1980); *see Plymel v. Teachers Retirement Sys.*, 281 Ga. 409, 412 (4) (637 SE2d 379) (2006). *See also Malcom v. Newton County*, 244 Ga. App. 464, 467-468 (535 SE2d 824) (2000) (finding that the fact that appellant made no contribution to the county-funded plan did not render the pension a gratuity which the county could terminate at will; the performance of services by appellant was consideration giving him a vested right in receiving benefits).

19

"the payment of retirement benefits in compliance with our statutes is not a gratuity, but is an incidence of employment."[55] Further,

> the ordinance or statute becomes part of the contract of employment and is a part of the compensation for the services rendered so that an attempt to amend the statute or ordinance and reduce, or eliminate, the retirement benefits the employee is to receive violates the impairment clause of the state constitution.[56]

Nevertheless, when the statute establishing the benefits plan provides that it is subject to change, "there [is] no contract that the plan of . . . benefits should never be changed."[57]

We applied these principles to a retirement plan established by a school board in *Murray County School District v. Adams*.[58] As in this case, the Murray County

---

[55] *Arneson v. Bd. of Trustees of Employees' Retirement Sys. of Ga.*, 257 Ga. 579, 582 (4) (d) (361 SE2d 805) (1987).

[56] *Murray County Sch. Dist. v. Adams*, 218 Ga. App. 220, 222 (1) (461 SE2d 228) (1995) (punctuation omitted).

[57] *Pritchard v. Bd. of Comm'r of Peace Officers Annuity & Benefit Fund of Ga.*, 211 Ga. 57, 59 (84 SE2d 26) (1954); *accord Pulliam v. Ga. Firemen's Pension Fund*, 262 Ga. 411, 412 (1) (419 SE2d 918) (1992).

[58] 218 Ga. App. 220 (461 SE2d 228) (1995).

School System did not participate in the Social Security system.[59] Given employee concerns, the Murray County Board of Education sought to establish a package of fringe benefits for its employees and, in furtherance of this purpose, approved a benefits plan presented by a program administrator.[60] Thereafter, employees of the Murray County School System brought a class action against the Murray County School District and the Murray County Board of Education, challenging their decision to terminate the employer matching portion of the benefit plan.[61] We concluded that the benefit plan became part of the employees' employment contract but that, because the document setting forth the plan terms provided that the employer had the full authority to administer the plan and to amend or terminate the plan at any time, the Murray County School Board had the right to modify the plan by terminating the employer's matching contributions.[62]

In characterizing the Murray County School Board's action in approving the employee-benefit package, we assumed, but did not decide, that it was a legislative

---

[59] *Id.* at 221.

[60] *Id.*

[61] *Id.* at 200.

[62] *Id.* at 223 (1).

21

action.[63] The District contends that, therefore, no court has decided to treat the rules or policies of a school board as equivalent to a statute or ordinance establishing a retirement plan. However, a board of education is "a governing authority for the political subdivision which makes up the school district," and as such, "it has the capacity to act as a legislative body, an executive body, and a judicial body."[64] The General Assembly has also provided that "[t]he county school superintendent and county board of education shall make rules to govern the county schools of their county."[65] And while the Board's legislative capacity is necessarily limited,[66] the District does not point to any State statute or any State Board of Education rule, regulation, or policy[67] which would expressly or implicitly restrict the Board's capacity to establish a retirement-benefits plan for School District employees.

---

[63] *Id.* at 222 (1).

[64] *Glynn County Bd. of Educ. v. Lane*, 261 Ga. 544, 545 (1) (407 SE2d 754) (1991).

[65] OCGA § 20-2-59.

[66] *See generally Davis v. Griffin-Spalding Cty., Ga., Bd. of Educ.*, 445 F. Supp. 1048, 1053-54 (N.D. Ga.1976) (local school board must yield to state supervision).

[67] *See, e. g.,* OCGA § 20-2-242 ("The members and executive officers of local governing boards shall comply with, execute, and enforce all laws and all policies, rules, standards, and regulations adopted by the State Board of Education pursuant to this article in order to be eligible to receive state funds under this article.").

Accordingly, we conclude that, consistent with statutes and ordinances establishing retirement benefits for other government employees, the legislative acts of the Board establishing a retirement plan for the School District employees may become part of the employees' contract of employment.

The District also argues that if the Board's retirement-benefits plan could be part of the Class members' contract of employment, the complaint shows that the TSA Plan provides that it may be amended or terminated at any time, and it follows that, as in *Adams*, the challenged change to the benefit plan was not a breach of the employment contract.

But here, the complaint shows that the Board resolved in 1979 to give its employees two-year's notice before reducing or terminating the funding provision to the alternate plan for Social Security, and the TSA Plan is alleged to be designated the alternative to Social Security. If there are apparent inconsistencies between the specific-notice requirement of the 1979 Resolution, stated Board policies,[68] and the amendment provision of the TSA Plan, a court is required under the rules of contract

---

[68] *See, e. g.*, *Tackett*, 304 Ga. App. at 310, 312 (1) (noting that "under Georgia law, employment policies relating to additional compensation plans, such as retirement benefits or insurance plans, may amount to a binding contract"); *Fulton-Dekalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 596-97 (2) (417 SE2d 163) (1992) (policies as to employment benefits may form part of contract of employment).

interpretation to attempt to give meaning to all provisions of the contract and look to "the whole contract . . . in arriving at the construction of any part."[69] And in the case *sub judice*, we cannot say, for purposes of the motion to dismiss,[70] that the specific-notice provisions of the 1979 Resolution would, upon consideration of the entire contract of employment, yield to the amendment provisions of the TSA Plan.[71] Accordingly, we find that Gold and the members of the class could possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of relief for breach of a written contract. It follows, then, that the trial court did not err in

---

[69] OCGA § 13-2-2 (4); *see Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002).

[70] The complaint does not contain the entire employment contract. The movant in a motion to dismiss for failure to state a claim upon which relief can be granted must show "that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Scouten v. Amerisave Mortgage Corp.*, 283 Ga. 72, 73 (1) (656 SE2d 820) (2008) (punctuation omitted). The appeal in *Adams*, in contrast, was from a ruling on a motion for summary judgment. 218 Ga. App. at 220.

[71] *See generally Rohm & Haas Co. v. Gainesville Paint & Supply Co.*, 225 Ga. App. 441, 444 (2) (b) (483 SE2d 888) (1997) (contract must be construed in its entirety, and not merely by examining isolated clauses and provisions thereof).

failing to dismiss Gold's claims for breach of contract and for breach of the covenant of good faith and fair dealing implied therein.[72]

In sum, we find that the trial court erred in denying the District's motion to dismiss Gold's claims for declaratory judgment, money had and received, unjust enrichment, promissory estoppel, and conversion. However, we conclude that the trial court did not err in denying the District's motion to dismiss Gold's claims for breach of contract and the implied covenant of good faith and fair dealing.

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Phipps, P. J., concur.*

---

[72] *See Dept. of Transp. v. Apac-Georgia*, 217 Ga. App. 103, 105-06 (2) (456 SE2d 668) (1995) (rejecting contention that claims against the State based on implied contractual duties are *ex delicto*, and, thus, barred by the doctrine of sovereign immunity).