**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 19, 2012**

# In the Court of Appeals of Georgia

A12A0797. PUBLIC SCHOOL RETIREMENT SYSTEMS OF
    GEORGIA v. AYERS

BARNES, Presiding Judge.

Public School Employees' Retirement System of Georgia ("the Retirement System") appeals the trial court's final order in this case in which it entered a $5,000 judgment for Leroy Ayers.[1] On appeal the Retirement System contends that the trial court erred in denying its motion for summary judgment and motion for a directed verdict. Following our review, we reverse.

---

[1] Under OCGA § 5-6-35 (6), "[a]ppeals in all actions for damages in which the judgment is $10,000.00 or less" must proceed by discretionary application. We granted the application in this case, resulting in this appeal.

The facts show that Ayers's mother, Esther, retired from her job with the Rome City School System in July of 1982. Under her retirement plan, Esther had the following three choices with respect to her retirement benefits:

> MAXIMUM MONTHLY BENEFIT: The largest amount possible. Upon my death, the benefit for the month of my death will be paid to my designated living beneficiary, or otherwise to my estate. If I have, at the time of my death received less in benefits than I have in accumulated contributions, the difference will also be paid in the above manner.

> OPTION "A": After my death, a specified portion of my monthly benefit will be paid to my *primary* beneficiary, if living, for the remainder of his or her life.

> OPTION "B": I am guaranteed a minimum number of monthly payments. Should I die before receiving this number of payments, the balance of the guaranteed payments will be paid to my designated beneficiary.

(Emphasis supplied.) Depending on her selection, Esther would receive varying amounts of monthly retirement benefits. The Monthly Benefits options entitled Esther to the largest benefit of $188.50 monthly during her lifetime, but after her death "no further monthly payments [would] be made to anyone. Option A provided for a smaller monthly benefit paid at retirement, *and* a benefit to the "primary beneficiary

2

(if living)." Its provisions entitled Esther to elect that her primary beneficiary receive either the "same" or "half" of the benefit she received. Specifically:

> a. Should you wish your beneficiary to receive the same benefit, you would receive $169.08 per month for the remainder of your life, after which your beneficiary (if living) will receive $169.08 per month for life.

> b. Should you wish your beneficiary to receive half the benefit you receive, you will receive $178.26 monthly for the remainder of your life, after which your beneficiary (if living) will receive $89.13 per month for life.

Option B provided for either 60, 120, or 180 monthly payments of $185.99, $178.30, or $165.97, and that, should Esther die before receiving the selected number of payments, her "named *living* beneficiary will receive the remaining monthly payments." (Emphasis added.)

Esther selected provision "a" of Option A, and listed her husband Grover as her "First" beneficiary. She also listed Ayers and his brother as her "Second" beneficiaries. The record includes a letter acknowledging Esther's selection and explaining that based on her selection of Option A as her benefit plan, she would receive $184.88 per month for her lifetime and that after her death, her "primary

3

beneficiary, Grover Ayers, will receive 100% of your retirement allowance for his lifetime." Grover died on May 5, 1991, and Ayers' brother died on November 1, 1995. Esther later died on March 31, 1999. The Retirement System automatically deposited retirement benefits into her bank account in April, May, and June 1999 in the total amount of $1064.91. Ayers withdrew these funds from the account.

The Retirement System subsequently sued Ayers to recover the amounts erroneously deposited into Esther's bank account after her death.[2] Ayers filed an answer and counterclaim, which he later amended, alleging, among other things, that he was entitled to the money as Esther's sole surviving beneficiary and that the Retirement System had breached the terms of Esther's retirement plan by refusing to pay continuing benefits to him. The Retirement System moved for summary judgment on Ayers' counterclaims, which the trial court denied after a hearing. The case was tried by a jury, and at the conclusion of evidence, The Retirement System moved for a directed verdict, which the trial court denied. The jury entered a verdict for Ayers in the amount of $5,000 for damages on his breach of contract counterclaim. The

---

[2]The Retirement Systems claim for "money had and received" alleged that it was entitled to the principal sum of $1,064.97 plus prejudgment interest at the rate of 7% per annum and post-judgement interest on the principal sum pursuant to OCGA § 7-4-12.

4

Retirement System filed for discretionary review of the final order, which we granted, and this appeal ensued.

The Retirement System contends that the trial court erred in denying its motion for summary judgment and for a directed verdict. We agree.

An appellate court, when

determining whether the trial court erred by denying appellant['s] motions for a directed verdict … must review and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict … is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation, emphasis and punctuation omitted.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990).

The retirement plan at issue was statutorily created, and once Esther made contributions toward her retirement, the plan became part of her employment contract. See OCGA § 47-4-1 et seq. (establishing the Public School Employees' Retirement System); *Plymel v. Teachers Retirement System*, 281 Ga. 409, 412 (4) (637 SE2d 379) (2006) ("statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee

5

contributes . . . toward the benefits he is to receive, and . . . performs services while the law is in effect"). Thus, this litigation involves the interpretation of a contract, and where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, contract construction is a matter of law for the trial court. *Homer v. Bd. of Regents of the University Sys. of Ga.*, 272 Ga. App. 683, 686 (613 SE2d 205) (2005); *Coleman v. Arrington Auto Sales & Rentals*, 294 Ga. App. 247, 249 (2) (669 SE2d 414) (2008) ( no contractual ambiguity exists "where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation") Moreover, in actions for breach of contract, damages are given as compensation for the breach. OCGA § 13-6-1. Thus, the "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2.

On her retirement application, Esther named Grover as her "First" beneficiary, and the benefits option she selected provided for payment of benefits upon her death only to her primary beneficiary, if *living*. See also OCGA § 47-4-102 (c) (following

6

death of retiree, Option A allowed for payment of retirement benefits to retiree's "surviving joint annuitant"); OCGA § 47-4-2 (12) (defining "joint annuitant" as "the person designated to receive benefits payable on the death of a member" under Option A). After Grover died, Esther had no *living* primary beneficiary authorized to receive retirement benefits upon her death, under the designation in Option A, and thus, contrary to Ayers' assertion otherwise, his designation as "Second" beneficiary did not authorize him to succeed Grover as the primary beneficiary under that option. Unlike Option B, which provided that any remaining monthly benefits would be paid to the living "designated beneficiary," Option A clearly provided that the benefits would be paid only to the "primary beneficiary (if living)."

The word "primary," as defined, means: "First. . . . First in order of time, or development, or in intention." Black's Law Dictionary, 6th Ed., at 1190. Thus, it stands to reason that under the language in Option A language, Grover – and no one else – stood to receive Esther's retirement benefits. Morever, Option A clearly expressed that this entitlement ended upon Grover's death, as he was the primary beneficiary. Accordingly, when Grover died, neither he nor his estate could recover the payments. Ayers, as a secondary beneficiary, had no claim to the funds under Option A, and thus, no contractual relationship existed between him and The

7

Retirement System such that he could recover for damages from that breach. See OCGA § 47-4-104 (d) (death benefits are "payable as provided for by the option elected").

Under these circumstances, the trial court erred in denying The Retirement Systems' motion for directed verdict. Accordingly, we remand the case to the trial court for entry of judgment in favor of The Retirement System on its claim.

2. Although The Retirement System also enumerated as error the denial of its motion for summary judgment

> if the denial of summary judgment prior to trial will affect the proceedings below after appeal and if it is enumerated as error, OCGA § 5-6-34 (d) requires that we address it. If the verdict is reversed and a new trial is ordered, the summary judgment ruling may affect the proceedings below. But if we reverse the judgment because appellant was entitled to a directed verdict, as in this case, . . . then the case is over, so the earlier denial of summary judgment to appellant will not affect the proceedings below, and is therefore moot.

(Emphasis omitted.) *Weir v. Kirby Constr. Co.*, 213 GA. App. 832, 836 (4) 9446 SE2d 186) (1994).

*Judgment reversed. Adams and McFadden, JJ., concur.*