294 Ga. 827
FINAL COPY

S13G0655.  AYERS v. PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM OF GEORGIA.

NAHMIAS, Justice.

The Public School Employees Retirement System of Georgia (PSERS) filed suit against Appellant Leroy Ayers to recover three months of benefit payments to his mother, Esther Ayers, that PSERS mistakenly made after Mrs. Ayers had died.  Appellant answered and counterclaimed, and a jury ultimately returned a $5,000 verdict in favor of Appellant.  PSERS appealed, and the Court of Appeals reversed, holding that the trial court erred in denying PSERS's motion for a directed verdict.  See Public School Employees Retirement System of Ga. v. Ayers, 319 Ga. App. 234 (734 SE2d 461) (2012).  We granted certiorari.

As explained below, the statutes that establish Mrs. Ayers's contract for retirement benefits do not authorize the payment of monthly retirement benefits beyond the life of Mrs. Ayers and her designated joint annuitant —  Mrs. Ayers's husband, Grover Ayers, who predeceased her. Accordingly, no benefits were payable to Appellant after Mrs. Ayers's death.  The Court of Appeals

correctly concluded that the trial court erred in denying PSERS's motion for a directed verdict, but did so primarily based on analysis of retirement forms Mrs. Ayers filled out and correspondence she exchanged with PSERS instead of analysis of the statutory scheme. We disagree with that rationale, but agree with the result, so we affirm the Court of Appeals' judgment.[1]

1.      Esther Ayers worked for the Rome City School System for almost 30 years before retiring as a cafeteria manager in 1982 at age 66. In November 1978, she signed a "Change of Beneficiaries" form prepared by PSERS on which she designated her husband, Grover Ayers, as her "First Beneficiary" and her two sons, Appellant and his brother, as her "Second Beneficiary." In March 1982, Mrs. Ayers requested information on her retirement benefit payment options, and PSERS sent her an explanation sheet summarizing the three options set forth in the governing statutes, OCGA §§ 47-4-101 and 47-4-102.

Mrs. Ayers then submitted an "Application for Retirement" that said: "I

---

[1] In our order granting certiorari, we directed the parties to address both the trial court's denial of PSERS's motion for a directed verdict and the trial court's denial of PSERS's motion for summary judgment. However, our holding that the trial court erred in denying PSERS's motion for a directed verdict moots any issue related to PSERS's summary judgment motion. See Ayers, 319 Ga. App. at 238. It should be noted, however, that both parties agree that this case involves no factual disputes; because the case involves only legal questions of statutory interpretation – and even on Appellant's argument, only legal questions of contract interpretation – it should not have been submitted to a jury for decision.

2

understand the provisions of applicable law pertaining to retirement allowances for which I may be eligible and with this knowledge I hereby elect and authorize the System to pay allowances under the plan I have indicated below." Below that, the application listed the three plan options – the maximum monthly benefit, Option A, and Option B. Mrs. Ayers placed a checkmark next to Option A, which said: "After my death, a specified portion of my monthly benefit will be paid to my primary beneficiary, if living, for the remainder of his or her life." (Emphasis in original.) The bottom half of the form had a section labeled "Designation of Beneficiary," where Mrs. Ayers designated her husband as her "beneficiary" and listed Appellant and his brother together as her "second beneficiary." (Emphasis in original.)

On May 10, 1982, PSERS wrote Mrs. Ayers a letter stating that her retirement application had been received; that under the Option A benefit payment plan that she had chosen, her 29 years and four months of service entitled her to "$184.88 per month for your lifetime"; and that "[a]fter your death, your primary beneficiary, Grover Ayers, will receive 100% of your retirement allowance for his lifetime." The letter did not mention Mrs. Ayers's sons. In closing, the letter said, "If you have any questions, or if there are any

3

changes which you wish to make in your retirement, please notify us immediately." A postscript informed Mrs. Ayers that "[t]he amount contributed by you into the plan prior to your retirement was $432.00." Mrs. Ayers retired effective July 1, 1982, and began receiving monthly benefits payments, the amount of which gradually increased over the years.

On March 31, 1999, Mrs. Ayers died. Her husband had predeceased her in 1991, as had Appellant's brother in 1995. Unaware of Mrs. Ayers's death, PSERS continued making electronic deposits to a bank account that she held jointly with Appellant in April, May, and June 1999. The deposits for these three months totaled $1,064.91, which Appellant withdrew and used for his mother's burial and to settle her finances. On November 3, 1999, Appellant submitted an "Application for Beneficiary's Allowance," which PSERS denied. In a series of letters over the next several years, PSERS demanded that Appellant immediately return the $1,064.91, but he never did.

On August 11, 2004, PSERS sued Appellant in Fulton County State Court to recover on an open account, for breach of contract, and for money had and received. The complaint sought damages plus pre- and post-judgment interest and costs. On September 16, 2004, Appellant answered and counterclaimed.

4

After PSERS moved for summary judgment on the counterclaims, Appellant dismissed all of them except counts for breach of contract and costs. The trial court denied PSERS's summary judgment motion in January 2009, and the case proceeded to trial in August 2009.

At the close of the evidence, PSERS moved for a directed verdict, which the trial court denied. The jury then returned a verdict for Appellant, awarding him $5,000 in damages on his breach of contract counterclaim, and the court entered judgment on that verdict.[2] The Court of Appeals granted PSERS's application for discretionary appeal, see OCGA § 5-6-35 (a) (6) (requiring an application to appeal a money judgment of $10,000 or less), and reversed. See Ayers, 319 Ga. App. at 243, n. 1, 238. The court reviewed the PSERS forms that Mrs. Ayers filled out and her correspondence with PSERS and concluded that these documents plainly indicated that Mrs. Ayers's retirement benefits would end upon her and her husband's death. The court therefore held that the

---

[2] In closing argument, PSERS asked the jury to return a verdict in its favor for $1,064.91 in principal plus $656.74 in prejudgment interest, and Appellant asked the jury to award him $46,314 for 124 months of missed benefit payments plus $12,587.32 in interest, for a total of $58,901.32. The jury initially returned a verdict finding for Appellant "in the amount of legal fees with no repayment of benefits," but the trial court sent the jury back to deliberate with a new verdict form and an admonition that the verdict was not in proper form and that the jury had heard no evidence or testimony as to legal fees.

5

trial court erred in denying PSERS's motion for a directed verdict. See id. at 238.

2. Appellant contends that the Court of Appeals erred in holding that PSERS was entitled to a directed verdict. We disagree.

(a) It is well settled under Georgia law that a statute or ordinance establishing a retirement plan for a government employee becomes a part of her contract of employment as soon as: (1) she performs services while the statute or ordinance is in effect; and (2) she contributes at any time any amount toward the benefits she is to receive. See Withers v. Register, 246 Ga. 158, 159 (269 SE2d 431) (1980); Bender v. Anglin, 207 Ga. 108, 112-113 (60 SE2d 756) (1950). Because the right to receive such benefits is contractual in nature, the Contract Clause of the Georgia Constitution precludes the application of subsequent laws if the effect is to reduce rather than increase the benefits payable. See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No . . . laws impairing the obligation of contract . . . shall be passed."); Withers, 246 Ga. at 159.[3]

---

[3] See also Ga. Const. of 1983, Art. III, Sec. X, Pars. I-II (expressly authorizing the expenditure of public funds not only "for the purpose of paying benefits and other costs of retirement and pension systems for public officers and employees and their beneficiaries," but also "for the purpose of increasing benefits being paid pursuant to any retirement or pension system wholly or partially supported from public funds").

Although the rights of Mrs. Ayers and those claiming through her, such as Appellant, are contractual in nature, this case does not involve an ordinary insurance contract. PSERS was created and is controlled by statute. See Public School Employees Retirement System Act ("PSERS Act"), Ga. L. 1969, p. 998, §§ 1-26 (codified as amended at OCGA §§ 47-4-1 to 47-4-121).[4] As a result, the PSERS Act itself supplied the terms of the written contract between PSERS and Mrs. Ayers. See Alverson v. Employees' Retirement System of Ga., 272 Ga. App. 389, 392 (613 SE2d 119) (2005) ("[T]he plaintiffs are parties to a written contract established by the Code provisions in effect when they performed services and contributed toward their retirement benefits."). See also Strickland v. City of Albany, 270 Ga. 31, 31 (504 SE2d 666) (1998) (holding that the city's pension plan "created by the governing ordinances form[ed] a contract between the City and its employees").

PSERS has no authority to vary the terms of the contract between public school employees and the State of Georgia that is expressed in the PSERS Act. See OCGA §§ 47-4-26 ("The [PSERS] board shall have authority to expend the

_____

[4] Our review of the evolution of the PSERS Act indicates, and Appellant does not dispute, that the provisions of the Act relied on in this opinion have not changed over time in a way that affects Appellant's claims.

funds [provided for in this chapter] in accordance with this chapter."), 47-4-102 (a) ("The benefit shall be paid in accordance with the terms of such option elected [by the employee]."). See also Strickland, 270 Ga. at 31-32 (rejecting reliance on the city's employee handbook to vary the terms of the pension plan created by ordinance, explaining that "[a] court cannot, under the guise of statutory construction, either revise or enlarge upon those clear provisions of the [p]lan"). As this Court explained long ago, the rule is that

> the payment of benefits on the death of a [public employee] depends upon the terms of the law providing the right for such benefits, and neither the [public employee], nor those claiming under [her], have any rights except those conferred by the statutes . . . governing the pension funds.

Burks v. Bd. of Trustees of Firemen's Pension Fund of Atlanta, 214 Ga. 251, 254 (104 SE2d 225) (1958). Accord Sams v. Elder, 145 Ga. App. 222, 223 (243 SE2d 644) (1978). Thus, Appellant's reliance on the retirement forms that Mrs. Ayers filled out and the correspondence she exchanged with PSERS in 1982 is misplaced, and the Court of Appeals' analysis focused on those extra-statutory materials, even if correct —  which it may well be —  was unnecessary.

(b)    We turn our attention, therefore, to the relevant terms of the PSERS Act. OCGA § 47-4-101 establishes the basic retirement benefit for members of

PSERS. Subsection (a) authorizes retirement after a minimum of ten years of creditable service. Subsection (c) says that a PSERS member who retires on her delayed retirement date (Mrs. Ayers retired at 66 instead of 65) "shall receive a monthly retirement benefit, payment of which shall commence on [her] delayed effective date of retirement and which shall be payable on the first day of each month thereafter during [her] lifetime." The amount of the monthly retirement benefit is a dollar figure multiplied by the number of years of creditable service. See OCGA § 47-4-102 (c). An employee receives the maximum possible monthly benefit under OCGA § 47-4-101, but those payments end when the employee dies; there is no provision for ongoing payments to any other person.

OCGA § 47-4-102 is titled "Optional retirement benefits." Subsection (a) allows a PSERS member to elect, at any time prior to retirement, a "joint and survivor option" or a "period certain and life option," instead of the higher monthly payments for the employee's lifetime alone under OCGA § 47-4-101. Subsections (c) and (d) of OCGA § 47-4-102 explain these two options as follows:

(c) Option A, the joint and survivor option, shall consist of a

9

decreased retirement benefit which shall be payable to the member for life and shall continue after his death to the surviving joint annuitant in the same amount or in such smaller amount as he may designate. The election of this option shall be null and void if either the member or his joint annuitant dies before his normal retirement date.

(d) Option B, the period certain and life option, shall consist of a decreased retirement benefit commencing on the date of retirement and payable on the first day of each month during the lifetime of the member, provided that if the member dies prior to having received the elected number of guaranteed monthly retirement payments, such remaining guaranteed payments shall continue to his designated beneficiary.

It is undisputed that Mrs. Ayers elected Option A. Option A authorizes PSERS to pay a "decreased [monthly] retirement benefit" structured as a "joint" annuity. If the designated "joint annuitant" dies before the employee retires, no one else takes his place. Instead, the employee's election of Option A becomes "null and void," thereby allowing the employee to receive her full retirement benefit under OCGA § 47-4-101. If both the employee and her chosen joint annuitant survive beyond the employee's normal retirement date, Option A guarantees lifetime monthly payments to the employee and to "the surviving joint annuitant." If the joint annuitant is not "surviving" — that is, if the joint annuitant does not survive after the retired employee's death — no further

payments are due under Option A, which is the "joint and *survivor* option."

OCGA § 47-4-2 (12) defines "joint annuitant" in the singular, as "*the person* designated to receive benefits payable on the death of a member, as provided in Option A" (emphasis added), and Option A makes no provision for multiple and successive joint annuitants. Moreover, subsection (b) of OCGA § 47-4-102 specifies that "[t]he amount of any optional retirement benefit set forth in this Code section shall be the actuarial equivalent of the amount of benefit that would otherwise be payable to the member under Code Section 47-4-101." Appellant concedes in his brief that "[g]iven the nature of the payments under Option A, it would [be] actuarially impossible to properly price an insurance policy where the potential beneficiaries have drastically different life expectancies." In sum, Option A authorizes retirement benefit payments for the life of the employee and the life of her designated, single, surviving joint annuitant. And Appellant does not claim, nor could he credibly do so on this record, that in electing Option A, Mrs. Ayers intended to name him rather than his father, her husband, as her joint annuitant.

Option B, by contrast, authorizes PSERS to pay a "decreased [monthly] retirement benefit" for a specified number of months chosen by the employee

11

prior to her retirement, with that full number of payments guaranteed. If the retired employee dies prior to receiving all of the payments, Option B requires PSERS to make the remaining payments to the employee's "designated beneficiary." No special provision is made in Option B for the death of a designated beneficiary prior to the employee's normal retirement date, because none is needed. First, the retired employee would still receive the same guaranteed number of monthly payments, which is the option that she elected. Second, the employee is allowed to name more than one beneficiary, with her estate as the residual beneficiary. Thus, OCGA § 47-4-2 (3) defines "beneficiary" to allow plural benefit recipients – "the living person *or persons* who are entitled to receive any benefits upon the death of a member and who were designated by the member by written notice to the board" (emphasis added), and adds that "[i]f the person or persons so designated are not living at the time of the death of the member, the beneficiary shall be the estate of the member." No actuarial problems are created, because the amount of the monthly payments is based on the number of payments selected, regardless of whether the employee or one or more beneficiaries receive them.

Appellant parses the retirement forms Mrs. Ayers filled out and the

12

correspondence she exchanged with PSERS in an attempt to show that they were confusing; he asserts that the documents therefore created a contract for a hybrid retirement benefit option that combined the lifetime benefits to a person other than the retired employee element of Option A with the ability to name multiple beneficiaries element of Option B. As explained above, however, those extra-statutory documents could not, as a matter of law, vary the terms of the retirement contract between Mrs. Ayers and the State established by the PSERS Act, and PSERS was not legally authorized to give an employee the hybrid option that Appellant postulates. Indeed, even if PSERS or its officials had made errors in administering its retirement plan with respect to Mrs. Ayers, it would not be estopped from correcting any deviations from the statutory scheme upon discovery. See Tate v. Teachers Retirement System of Ga., 257 Ga. 365, 366 (359 SE2d 649) (1987) ("It is well settled that 'Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power.'" (citation omitted)).

(c) For these reasons, Appellant was not entitled to the three months of retirement benefit payments that PSERS mistakenly paid after Mrs. Ayers's

13

death into the joint bank account that Appellant shared with his mother, or to the additional monthly payments for which he counterclaimed. Thus, the trial court erred in denying PSERS's motion for a directed verdict in its favor on PSERS's complaint and Appellant's counterclaims; the Court of Appeals properly reversed ruling; and we affirm the Court of Appeals' judgment.

Judgment affirmed. All the Justices concur.

Decided March 17, 2014.

Certiorari to the Court of Appeals of Georgia – 319 Ga. App. 234.

Hernan, Taylor & Lee, Jerome Lee, for appellant.

Stokes, Lazarus & Carmichael, Thomas V. Keough, for appellee.