**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0526. GOLD et al. v. DEKALB COUNTY SCHOOL DISTRICT et al.

ELLINGTON, Presiding Judge.

In March 2011, the appellants[1] sued the DeKalb County School District "the District") and the DeKalb County Board of Education ("the Board")[2] for, inter alia, breaching an agreement to provide two years' advance notice prior to suspending contributions to their Georgia Tax Shelter Annuity Plan ("TSA Plan") accounts. In 2017, after the appellants had twice amended their complaint and after the completion of discovery, the parties filed cross-motions for summary judgment on the issue of liability for the appellees' alleged breach of what the appellants contend is a two-year

---

[1] Appellants Elaine Ann Gold, Amy Jacobson Shaye, Heather Hunter, and Roderick Benson are or were employees of Dekalb County schools.

[2] The individually named defendants were dismissed as parties.

notice provision that had been made a part of their TSA Plan. After a hearing, the Superior Court of DeKalb County found that the appellants had "failed to establish the existence of an enforceable, valid contract that was breached by the School District when it suspended certain contributions to" the TSA Plan and that the appellees were entitled to judgment as a matter of law on all of the appellants' remaining claims.[3] The superior court did not consider the merits of the appellants' motion for summary judgment or for class certification, finding both moot. The appellants contend that the court's order was erroneous because the evidence shows the existence of an enforceable "governmental promise" that required two years' notice before reducing or suspending funding to the TSA plan. Specifically, the appellants argue that because the promise to provide two years' notice "was adopted as Board Policy, it became part of the employees' employment contracts, protected

---

[3] We note that this appeal is the third appearance of this case before this Court. In *DeKalb County School District v. Gold*, 318 Ga. App. 633 (734 SE2d 466) (2012) ("*Gold I*"), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016), we affirmed the trial court's order denying the school district's motion to dismiss the plaintiffs' claims for breach of contract and the associated implied covenant of good faith and fair dealing. Finding that the district was entitled to sovereign immunity, we reversed the lower court's judgment in all other respects. Id. at 635-641 (1). A few years later, we then upheld the trial court's denial of the plaintiffs' class certification motion in an unpublished decision, *Gold v. DeKalb County School District*, Case No. A14A1557 (Ga. App., decided March 30, 2015) ("*Gold II*").

2

by Georgia's prohibition on retroactive laws and impairment of contracts." For the reasons set forth below, we agree and reverse the judgment of the superior court on the issue of liability, we vacate the remainder of the court's order, and we remand with direction.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776) (2015). The relevant facts of this case are undisputed.

Until 1979, the District participated in the Social Security System pursuant to a "§ 418 agreement" with the federal government, an agreement that voluntarily extended Social Security retirement benefits to District employees.[4] In 1977, the

---

[4] In 1935, the Social Security Act excluded state and local government employees from Social Security coverage because many questioned whether Congress could constitutionally compel the States and their political subdivisions to include their employees in the Social Security System. *Bowen v. Public Agencies Opposed To Social Sec. Entrapment*, 477 U. S. 41, 44 (I) (A) (106 SCt 2390, 91 LE2d 35)

Board notified its employees that it was considering terminating its § 418 agreement and withdrawing from the Social Security System, effective October 1, 1979, in favor of an alternative plan.[5] From 1977 through 1979, the District sought the advice of experts and explored the wishes of its employees in the event that it ultimately decided to end its participation in the Social Security System.

In May 1979, the Board passed a resolution reaffirming its intent to withdraw from Social Security. The Board authorized a referendum to permit its employees to review, debate, and vote on whether to remain in the Social Security System or to

---

(1986). However, since many government employees did not have their own retirement system, Congress amended the Social Security Act in 1950 to add Section 218 of the Social Security Act, codified at 42 USC § 418, which allowed states and local governments to enter into "§ 418 agreements" (also called "§ 218 agreements") with the Social Security Administration to voluntarily extend Social Security coverage to designated state and local government employees who were not covered by a retirement system. *Bowen*, 477 U. S. at 44-45 (I) (A). While states were originally allowed to withdraw from their § 418 agreements, Congress prohibited such withdrawals beginning in 1983. Id. at 48 (I) (A). Up until 1983, states and local governments could withdraw from their agreements "upon giving at least two years' advance notice in writing to the Secretary [of Health and Human Services]." (Punctuation omitted.) Id. at 45 (I) (A).

[5] At the time, all full-time employees of the school district participated in one of three public-employee retirement systems, either the Teacher's Retirement System ("TRS"), the Employees' Retirement System of Georgia ("ERS"), or the Public School Employees Retirement System ("PSERS"). TRS and ERS qualified as Social Security alternative retirement plans, but PSERS did not.

adopt an alternative plan. The resolution set forth the method of funding the alternative plan in the event the Board withdrew from the Social Security System. It concluded by resolving

> [t]hat the amount required for the forthcoming year to continue funding Social Security shall be the amount budgeted to fund the alternative to Social Security, and that the Board of Education will give a two year notice to the employees before reducing or terminating these funding provisions.

In late June 1979, after a majority of employees voted in favor of the alternative plan, the Board voted to leave the Social Security System. The meeting concluded with a motion being passed to have a DeKalb County school system insurance consultant meet with experts and "to draw plans and specifications for the alternative plan[.]"

On September 28, 1979, the Board's superintendent signed a "Master Application" with the Variable Annuity Life Insurance Company ("VALIC") for a "Group Tax Sheltered Fixed Dollar Annuity Contract." The VALIC annuity contract became effective on October 1, 1979. The annuity contract provided that the contract

and the application "constitute[d] the entire contract between the parties."[6] The benefits provided by the VALIC annuity contract served as a qualified Social Security alternative plan for PSERS employees and as an additional retirement benefits for TRS and ERS employees.

On June 14, 1982, the Board met and amended the By-Laws and Policies of the DeKalb County Board of Education. Prior to that meeting, the Board's policy on "Social Security/Alternative Plan of Benefits" provided:

> Employees of the DeKalb School System shall have the benefits of Social Security under the Federal Insurance Contributions Act, or an alternative plan of benefits of comparable cost in lieu of Social Security. Salary deductions shall be made for employees as required and the Board of Education shall provide the funds required to support Social Security or the alternative plan of benefits.

---

[6] Although the annuity contract did not contain any provisions requiring the District to notify employees about changes to the annuity contract's funding, district employees were not parties to the contract. The contract owner is defined as "[t]he entity to which a Group Annuity Contract is issued and which is an organization qualified to purchase an annuity contract meeting the requirements of Section 403 (b) of the Internal Revenue Code." The Contract was issued by VALIC to the DeKalb County Board of Education, "a public school system eligible to establish such a contract." It was not issued to the employees, who are defined not as parties but as "participants." Thus, the TSA Plan is a contract between the Board and VALIC, not the Board and its employees. As the District's expert testified, Plan documents describe "what is [to be] done by the employer," but they are not "a contract between the District and its employees."

6

The Board's By-Laws and Policies contained no provision requiring notice of any planned reductions to the funding of the alternative plan. A few weeks before the June 1982 meeting, the chairman of the District's Employees Trust Fund Advisory Committee recommended that the Board add a two-year notice provision concerning any changes to the alternative plan's funding. At the June 14 meeting, the Board followed the chairman's suggestion and amended the "By-Laws and Policies of the DeKalb County Board of Education," adopting a Board Policy that outlined certain improvements to and components of its alternative plan and which provided that the "Board of Education shall give a two-year notice to employees before reducing the funding provisions of the Alternative Plan to Social Security." This provision was adopted with the requisite "legislative" formalities for Board policies: it was read a month prior to the June 14 Board meeting, it sat "on the table" for a month, and it was voted upon at the next regular monthly Board meeting. Thereafter, it was published.

Shortly after amending its by-laws, the Board reviewed a July 1982 report from one of its financial advisors which recommended that the Board prepare its own alternative plan to have more flexibility in the event that its contract with VALIC was terminated. In September 1982, the Board recommended that "the firm of Peat, Marwick, Mitchell & Company be retained to assist the DeKalb Board of Education

7

and the Employee Trust Fund Advisory Committee in preparing a Board TSA Plan Document[.]"

During its July 11, 1983 meeting, the Board voted to establish its own "DeKalb County, Georgia Board of Education Tax Sheltered Annuity Plan." The purpose of the TSA Plan was to provide a "written standard procedure under which retirement benefits to serve in lieu of Social Security are provided and administered on behalf of Eligible Employees." The TSA Plan was a defined-contribution, employer-funded 403(b) plan.[7] The TSA Plan provided that "[t]his Plan may be amended or terminated by the Employer at any time. No amendment or termination of the Plan shall reduce or impair the rights of any Participant or Beneficiary that have already accrued." On August 11, 2003, the Board passed a resolution that "amended and restated" the 1983 TSA Plan. The Board adopted the restated Plan by passing a resolution which was

---

[7] A "defined contribution plan" means "a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 26 USC § 414 (i). A § 403 (b) Tax-Sheltered Annuity (TSA) Plan is a retirement plan offered by public schools and certain tax-exempt organizations. See 26 USC § 403(b). An individual's 403 (b) annuity can be obtained only under an employer's TSA plan. Id. Generally, these annuities are funded by elective deferrals made under salary reduction agreements and nonelective employer contributions. Id.

8

read into the minutes of the August 11, 2003 Board meeting and made available to the public. Neither the 1983 Plan Documents nor the 2003 Plan documents were adopted using the formal legislative protocols for amending Board policies or expressly made a part of the Board's policies. In fact, when the Board authorized its superintendent to execute the TSA Plan document, it provided that the superintendent's actions with respect to the TSA Plan must be "consistent with the general compensation policies of the Board[.]"[8]

In July 2009, the Governor announced a three percent reduction in state funding for all Georgia school systems. In an effort to manage the expected loss of up to $20 million in state funding and the resulting budget deficit, the Board decided to suspend contributions to the TSA Plan. To implement the decision, the Board voted to amend the TSA Plan and to suspend, after July 31, 2009, the contributions for those employees who were also participating in TRS and ERS. Although the Board notified employees that funding of the TSA plan would be suspended, it did not give two years' notice prior to suspending funding. We note that there is some

_____

[8] OCGA § 20-2-109 provides, in relevant part, that it is the local school superintendent's "duty to enforce all regulations and rules . . . of the local board according to the laws of the state and the rules and regulations made by the local board that are not in conflict with state law[s]."

9

evidence in the record from which a fact-finder could infer that the Board was aware that suspending funding to the TSA Plan without the required notice violated its own policies.[9] There is no evidence in the record that the District has restored any funding to the TSA Plan. In June 2010, after complying with its legislative formalities, the Board amended its by-laws and policies to remove the two-year notice provision.

1. The appellants concede that the TSA Plan documents do not give them a right to two years' notice before the Plan is amended or terminated. Rather, they contend that the two-year notice provision was part of a separate governmental promise to any eligible employee who was or who might become a Plan participant, a promise that was enacted by the Board with all the relevant legislative formalities, codified in its by-laws and policies, and thus made a part of the employees' contract of employment. Because the notice provision has the force of statutory law, the appellants contend, it cannot be amended by the TSA Plan documents, which the they argue are "subordinate" to it. For the reasons that follow, we agree.

In *Gold I*, we explained:

---

[9] For example, in a May 2010 Board meeting a Board member publically declared that the Board had determined that it had violated the two-year notice provision.

It is well established that a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect. Thus, the payment of retirement benefits in compliance with our statutes is not a gratuity, but is an incidence of employment. *Further, the ordinance or statute becomes part of the contract of employment and is a part of the compensation for the services rendered so that an attempt to amend the statute or ordinance and reduce, or eliminate, the retirement benefits the employee is to receive violates the impairment clause of the state constitution.*

(Punctuation and footnotes omitted; emphasis added.) *Gold I*, 318 Ga. App. at 642-643 (2). See also Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No … laws impairing the obligation of contract … shall be passed."). Further, a board of education has the capacity to act as a legislative body, and the "legislative acts of the Board establishing a retirement plan for the School District employees may become part of the employees' contract of employment." *Gold I*, 318 Ga. App. at 644 (2).[10] The

---

[10] It is well-settled that "[a] board of education is a governing authority for the political subdivision which makes up the school district, and[,] as such, it has the capacity to act as a legislative body, an executive body, and a judicial body." (Footnote omitted.) *Gold*, 318 Ga. App. at 643 (2). The General Assembly has also provided that "[t]he county school superintendent and county board of education shall make rules to govern the county schools of their county." OCGA § 20-2-59.

11

appellants' submitted evidence showing both the existence of a legislatively enacted

notice provision that became a part of their employment contracts and a breach of that

provision.

With respect to the legislatively enacted notice provision, the record shows that

the Board followed its own protocols – from first reading to publishing – for

modifying its Board Policy concerning "Social Security/Alternative Plan of Benefits"

to add the two-year notice provision. As a legislative enactment, the provision

became a part of the appellants' contract of employment. Id. at 642-643 (2). Because

the notice provision was a substantive[11] part of the appellants' contract of

employment, the District's admitted breach[12] of that notice provision and its attempt

_____

[11] We reject the District's argument that the notice provision was merely procedural or directory and that breaching it would not affect the appellants' substantive rights. As shown above, the failure to comply with the notice provision resulted in the loss of contributions to the TSA plan, contributions which otherwise would have become property of the appellants under the Plan. Under such circumstances as these, where the lack of notice will result in injury or prejudice to propery rights, the right to notice is substantive, too. See *Charles H. Wesley Educ. Foundation v. State Election Bd.*, 282 Ga. 707, 709-710 (2) (654 SE2d 127) (2007).

[12] The District's argument that its Board policies contained a reservation of rights that allowed it unfettered discretion to disregard its own policies is not supported by record. Further, the record does not contain any facts demonstrating that the District – *prior to suspending funding to the TSA Plan* – had, in the exercise of its discretion, considered whether to suspend, amend, or disregard the two-year notice provision prior to suspending funding to the TSA Plan. See *Shelnutt v. Mayor and*

12

to repeal it retroactively violated the impairment clause of the state constitution.[13] See id.

Nothing in the TSA Plan documents altered or amended the District's contractual obligation to give its employees two years' notice prior to suspending funding the TSA Plan. First, the TSA documents were not legislatively enacted and made a part of the Board's policies; thus, they did not become a part of the appellants' contracts of employment. Second, the appellants are not parties to the TSA Plan documents; rather, they are participants in the Plan. As the District's own expert explained, the TSA Plan is not a traditional contract between individuals. Rather it is a document detailing the administration of the tax sheltered annuity plan, a plan that is ancillary to or subordinate to the District's contractual obligations to its

---

*Aldermen of the City of Savannah*, 333 Ga. App. 446, 454 (3) (776 SE2d 650) (2015) (Whether a party exercises good faith and honest judgment in the performance of a contract is a question of fact.) (citation and punctuation omitted).

[13] We find no merit in the District's argument that the Board's TSA Policy was not sufficiently specific to be enforceable. An agreement concerning future compensation is sufficiently detailed if it provides a formula or method for determining the amount of compensation. See *Shelnutt v. Mayor and Aldermen of the City of Savannah*, 333 Ga. App. at 451 (3) ("the promise of future compensation must also be for an exact amount *or based upon a formula* or method for determining the exact amount of the compensation.") (citations and punctuation omitted.) In this case, the formula was expressly described as being comparable to what the appellants would enjoy under the Social Security System.

employees. Such "extra-statutory" documents cannot modify the terms of the legislatively enacted board policy. See *Ayers v. Public School Employees Retirement System of Georgia*, 294 Ga. 827, 831 (2) (a) (756 SE2d 538) (2014) (The appellant's reliance on the "extra-statutory materials" was misplaced.).

Third and finally, even if the TSA plan is considered to be part of the appellants' employment contracts, the termination language in the TSA Plan documents can be harmonized with the Board's two-year notice provision.[14] Although the plan document provides that the District may modify or terminate the plan at any time, it sets forth an exception to that general rule: "No amendment or termination of the Plan shall reduce or impair the rights of any Participant or Beneficiary that have already accrued." As discussed above, the two-year notice provision contained in the Board Policy is a substantive right that had accrued to the benefit of the appellants

---

[14] In construing a contract, the court ascertains the intention of the parties from a review of "the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions." (Citation and punctuation omitted.) *White v. Kaminsky*, 271 Ga. App. 719, 722 (610 SE2d 542) (2004); see also OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."). Each provision of an agreement should be interpreted to harmonize with the others. *Krogh v. Pargar, LLC,* 277 Ga. App. 35, 38 (2) (625 SE2d 435) (2005).

through their contracts of employment. Thus, as the appellants argue, the District could amend the plan at any time, unless it sought to reduce the Plan's funding provisions. It might also terminate the plan, so long as it provides two years' notice.

For this reason, the trial court erred in granting the District's motion for summary judgment and in denying the appellant's motion for summary judgment on the issue of liability for breach of the two-year notice provision. Consequently, we reverse the court's judgment in this respect.

2. Because the trial court considered any other issues or motions pending below moot in light of its summary judgment in favor of the District, we vacate the remainder of the court's order and remand the case for reconsideration in light of our holding in Division 1.

*Judgment reversed in part and vacated in part, and case remanded with direction. Senior Appellate Judge Herbert E. Phipps concurs. Bethel, J., concurs fully and specially.*

A18A0526. GOLD, et al. v. DEKALB COUNTY SCHOOL DISTRICT

BETHEL, Judge, concurring fully and specially.

In *Gold I*, we indicated that the plaintiffs "could possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of relief for breach of written contract."[1] Following discovery, they have. As *Gold I* specifically contemplated, the plaintiffs have established that the board policy requiring notice did comport with the legislative protocols to the extent it provided a statutory element

---

[1] *DeKalb County School District v. Gold,* 318 Ga. App. 633, 645 (734 SE2d 466) (2012).

that could be incorporated into the employment contract of the plaintiffs.[2] Once incorporated into the employment contract, the notice requirement must be read in harmony with the balance of the relevant provisions. This is the law of contract construction and the law of the case. With the entire employment contract now available in the record,[3] it is apparent that the District, during the relevant period, voluntarily provided legislative assurance to its employees that they would receive two years notice prior to a reduction in contributions to the TSA Plan.

---

[2]*Id.* at 642-645.

[3]*Id.* at 644 n. 70.

2