307 Ga. 330
FINAL COPY

S18G1419. DEKALB COUNTY SCHOOL DISTRICT et al. v. GOLD et al.

MELTON, Chief Justice.

In March 2011, Elaine Gold, Amy Shaye, Heather Hunter, and Roderick Benson ("Appellees") sued Appellants, the DeKalb County School District ("the District") and the DeKalb County Board of Education ("the Board") for, inter alia, breaching an agreement to provide two-years advance notice prior to suspending contributions to their DeKalb County Tax-Sheltered Annuity Plan ("TSA Plan") accounts. Finding that Appellees failed to establish the existence of an enforceable contract, the trial court granted summary judgment in favor of Appellants, and Appellees appealed to the Court of Appeals. The Court of Appeals reversed the grant of summary judgment on the issue of liability, vacated the remainder of the court's order, and remanded the case with direction. See *Gold v. DeKalb County School Dist.*, 346 Ga. App. 108 (815 SE2d 259) (2018)

("*Gold III*").[1]

We granted certiorari to decide whether the Court of Appeals erred by concluding that the two-year notice provision became part of Appellees' employment contracts. Though we disagree with the Court of Appeals' analysis, we agree with the court's ultimate conclusion. Accordingly, we affirm.

1. *Factual Background.*

As recounted by the Court of Appeals, in 1979, the Board withdrew from Social Security in favor of an alternative benefits plan, which included a Tax-Sheltered Annuity Plan managed by an

---

[1] As explained in *Gold III*, the procedural history of this case in the Court of Appeals is as follows:

> We note that this appeal is the third appearance of this case before [the Court of Appeals]. In *DeKalb County School Dist. v. Gold*, 318 Ga. App. 633 (734 SE2d 466) (2012) ("*Gold I*"), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016), we affirmed the trial court's order denying the school district's motion to dismiss the plaintiffs' claims for breach of contract and the associated implied covenant of good faith and fair dealing. Finding that the district was entitled to sovereign immunity, we reversed the lower court's judgment in all other respects. Id. at 635-641 (1). A few years later, we then upheld the trial court's denial of the plaintiffs' class certification motion in an unpublished decision, *Gold v. DeKalb County School Dist.*, 331 Ga. App. XXV (Case No. A14A1557) (March 30, 2015) ("*Gold II*").

*Gold III*, 346 Ga. App. at 109, n.3.

2

outside insurance company.[2]  *Gold III*, supra, at 109-110.

In September 1980, the Board authorized the DeKalb County Superintendent "to appoint an Employee Trust Fund Advisory Committee to recommend to the Superintendent changes and improvements in the Employees' Alternative Plan to Social Security."  In May 1982, the Chairman of the Employee Trust Fund Advisory Committee proposed an amendment to the Board's bylaws and policies concerning the "Social Security/Alternative Plan of Benefits."  The proposed amendment stated:

> [The Board] shall provide all full-time employees with an alternative program to Social Security. The amount of funds placed annually in the alternative program shall equal the amount that the school system would have paid had the school system remained under Social Security.
>
> The Alternative Plan to Social Security shall include, at a minimum, the following:
> 1.    Improvements to the survivor benefit life insurance plan in existence in September, 1979.

---

[2] As noted by the Court of Appeals:
A § 403 (b) Tax-Sheltered Annuity (TSA) Plan is a retirement plan offered by public schools and certain tax-exempt organizations. See 26 USC § 403 (b). An individual's 403 (b) annuity can be obtained only under an employer's TSA plan. Id. Generally, these annuities are funded by elective deferrals made under salary reduction agreements and nonelective employer contributions. Id.
*Gold III*, supra, at 112, n.7.

The survivor benefit plan is designed to provide lump sum payments to beneficiaries and monthly income to eligible surviving family members upon the death of an employee.

2.  Improvements to the long-term disability plan in existence in September, 1979.
    The disability benefits plan provides disabled employees a coordinated benefit for a specified period of time following an established elimination period.

3.  Supplemental retirement plan paid for by [the Board].
    The supplemental retirement plan provides retirement benefits through legally mandated and/or Board approved contribution and investment strategies.

*[The Board] shall give a two-year notice to employees before reducing the funding provisions of the Alternative Plan to Social Security.*

Procedure number 7085 defines the method for distributing the Alternative Plan funds.[3]

---

[3] Procedure 7085 stated:

Each year a determination shall be made as to the amount that would have been required for continued participation in Social Security during the forthcoming fiscal year, and this amount shall be budgeted to fund the Alternative Plan to Social Security.

The amount determined above shall be distributed as follows:

1.  Cost for improvements to the survivor benefit plan over and above the cost of the September, 1979 base plan.

2.  Cost for improvements to the long-term disability plan over and above the cost of the

4

(Emphasis supplied.) The proposed amendment, including the two-year notice requirement, was then placed on the table until the June 1982 meeting where, with a unanimous vote, the Board amended its bylaws and policies concerning the Alternative Plan to Social Security ("the 1982 Amendment"); this amendment was then published. *Gold III*, supra, at 110.

In 1983, the county's Risk Management Director presented the Board with a proposed TSA Plan document that detailed a defined-contribution, employer-funded § 403 (b) plan. *Gold III*, supra, at 111. Subsection 3.05 of the document provided that "[a]ll

---

September, 1979 base plan.

3. Cost for contributions to the Teachers Retirement System for the DeKalb County Board of Education's contribution to the employees' annuity (Ga. Code 32-2901 provides that all money paid by an employer for a member or by a member into any plan of Tax Sheltered Annuity shall be included as earnable compensation for the purpose of computing any contributions required to be made to the Teachers Retirement System, and also for the purpose of computing any benefits).

4. Remainder to employees' annuity plan.

5

contributions under the Plan shall be made by [the Board]," and explained that "Participant contributions are not required; however, the Employer maintains the right to require contributions from Plan Participants when deemed appropriate." Subsection 6.02 of the TSA Plan provided that "[t]his Plan may be amended or terminated by the Employer at any time. No amendment or termination of the Plan shall reduce or impair the rights of any Participant or Beneficiary that have already accrued." The Board voted to adopt the 1983 TSA Plan during the same meeting at which it was first presented. In 2003, the Board approved a restatement of the TSA Plan, once again adopting the document at the same meeting at which it was presented. Subsection 4.5 of the 2003 TSA Plan stated that "[p]articipant contributions to the Plan are neither required nor permitted," and Subsection 8.3 of the plan document provided for the amendment or termination of the plan "at any time." In both 1983 and 2003, the Board voted to adopt the TSA Plan, but the Board did not vote to amend its bylaws.

The TSA Plan remained in effect until July 2009, when the

Board held an emergency meeting to discuss the reduction of state funding for all of Georgia's school systems due to the economic recession. At this meeting, the Board voted to "temporarily suspend" the TSA Plan and substantially amended the plan's funding provisions, ending all contributions to certain employees' supplemental retirement accounts as of July 31, 2009. Though there was no corresponding amendment to the Board's bylaws at this time, approximately one year later, in June 2010, the Board amended its bylaws, eliminating the two-year notice provision adopted in 1982. *Gold III*, supra, at 112.

2. *Procedural Background.*

In March 2011, Appellees filed suit alleging, inter alia, that the Board and the District had breached the contractual agreement to provide two-years notice prior to reducing funding to Appellees' supplemental retirement plan. After the completion of discovery, the parties filed cross-motions for summary judgment on the issue of liability. After a hearing, the trial court found, in relevant part, that

7

neither the 1979 Resolution nor the 1982 Policy formed an enforceable contract between [Appellees] and the School District as a matter of law. Moreover, even if those documents could give rise to an enforceable contract, the record reflects that no breach of those documents occurred as a result of certain suspension of the TSA Plan contributions in July 2009. The record further shows that if any contract does exist, it is the TSA Plan that forms the entirety of the contract during the period of time relevant to this litigation, and [Appellees] can use neither the 1979 Resolution nor the 1982 Board Policy to modify or add to the terms of that TSA Plan. Rather, the Court must enforce the unambiguous terms of the TSA Plan, which allow the School District to amend or even terminate the contributions to the Plan at any time, without the advance notice that [Appellees] seek.

Appellees appealed this decision to the Court of Appeals.

In reversing the trial court's grant of summary judgment, the Court of Appeals determined that: the 1982 Amendment's two-year notice provision was a "legislative act" that became a substantive part of Appellees' employment contracts; the TSA Plan was not a legislative act and, therefore, was not a part of Appellees' employment contracts; and even if the TSA Plan was a part of the employment contract, its termination language could be harmonized with the 1982 Amendment's two-year notice provision pursuant to

8

the standard rules of contract construction. *Gold III*, supra, at 113-114. We granted the petition for certiorari to review the decision of the Court of Appeals.

3. *Analysis.*

The salient issue to be resolved in this case is whether the two-year notice provision in the 1982 Amendment became a part of an employment contract between Appellants and Appellees. Appellants rely on Georgia case law that provides

> a statute or ordinance establishing a retirement plan for a government employee becomes a part of [a] contract of employment as soon as: (1) [the employee] performs services while the statute or ordinance is in effect; and (2) [the employee] contributes at any time any amount toward the benefits [they are] to receive. See *Withers v. Register*, 246 Ga. 158, 159 (269 SE2d 431) (1980); *Bender v. Anglin*, 207 Ga. 108, 112-113 (60 SE2d 756) (1950).

*Ayers v. Public School Employees Retirement System of Ga.*, 294 Ga. 827, 830 (2) (a) (756 SE2d 538) (2014). See also *Borders v. City of Atlanta*, 298 Ga. 188 (II) (779 SE2d 279) (2015). Appellants contend that the Court of Appeals erred in reversing the trial court because: (a) none of the Board's actions in this case were legislative acts; (b)

the Board's 1982 Amendment did not establish a retirement plan; and (c) Appellees did not contribute to the retirement plan and, therefore, did not provide the proper consideration in order to form a contract. We disagree and affirm the decision of the Court of Appeals.

To begin, we must look to basic contract principles in order to determine whether the Board's actions created a binding contractual relationship with its employees.[4] See OCGA § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."). In conducting such a review, "[i]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense." (Citations omitted.) *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391,

---

[4] The Board is generally authorized to create such retirement plans. See OCGA § 20-2-59.

10

395 (297 SE2d 733) (1982). When reviewing whether the parties formed a contract, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." *Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374) (2006).

The record shows that the Board decided to replace Social Security with an alternative benefits plan because the Board believed it would help with employee recruitment and retention. Then, in 1982, upon the recommendation of the Employee Trust Fund Committee, the Board amended its bylaws wherein it committed to provide its employees with an alternative plan to Social Security funded in the same amount the Board would have paid under Social Security, and to "give a two-year notice to employees before reducing the funding provisions of the Alternative Plan to Social Security." This action constituted a standing offer by the Board to provide two-years notice to all its employees, current and new, before reducing funding to the plan benefits for those

11

employees. And each employee accepted this offer by performing work pursuant to these terms.

Citing *Borders*, 298 Ga. 188, Appellants contend that, because the 2003 TSA Plan specifically prohibited employees from contributing to their retirement, Appellees failed to provide the consideration necessary to form a contract. We acknowledge the conflict in Georgia case law concerning whether a monetary contribution by an employee is *required* in order for a retirement plan to be considered a part of an employment contract; however, the true governing principle is to treat the government's agreement to pay a pension as a contract where there is consideration flowing from both parties. See *Trotzier v. McElroy*, 182 Ga. 719, 723 (186 SE 817) (1936).[5] "To constitute consideration, a performance or a

---

[5] Compare *Bender*, 207 Ga. at 109 (holding that "a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor" unless employee contributes into the pension); *Ayers*, supra (statute establishing a retirement plan becomes a part of an employment contract if employee contributes and performs); *Borders*, 298 Ga. at 193 (II) (same); *Withers*, 246 Ga. at 159 (1); with *Cole v. Foster*, 207 Ga. 416, 420 (4) (61 SE2d 814) (1950) ("The provisions . . . requiring that peace officers pay a defined monthly sum

return promise must be bargained for by the parties to a contract."

OCGA § 13-3-42 (a).  See also OCGA § 13-3-42 (b) ("A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.").

Here, the record shows that Appellants offered their employees a retirement benefits plan, and also promised to provide two-years notice before reducing any of the funding provisions of the benefits plan.  In exchange, the employees agreed to begin to work or continue to work for Appellants, and to wait until their retirement to collect these funds.  That bargain contemplated the necessary consideration flowing from both parties, thus making the two-year

_____

into the fund, create a contractual relation, and the disability and retirement pay provided therein is not a gratuity but is adjusted compensation for services rendered"); *Atlantic Steel Co. v. Kitchens*, 228 Ga. 708, 713 (187 SE2d 824) (1972) ("[t]he fact that the employee makes no contribution to the pension fund does not make the pension a gratuity which the employer can withhold at will. A pension is adjusted compensation for services rendered"); *Malcolm v. Newton County.*, 244 Ga. App. 464, 467 (1) (535 SE2d 824) (2000) (same); *City of Athens v. McGahee*, 178 Ga. App. 76 (341 SE2d 855) (1986); *Dinnan v. Totis*, 159 Ga. App. 352 (283 SE2d 321) (1981).  We will not go back and review the details of each of these prior cases in order to determine whether they correctly applied normal contract principles, as we make clear in this opinion that this is the proper approach.

notice provision a part of Appellees' employment contracts.

Appellants contend that, to the extent that the Board's policies created a contract, the Board's subsequent approval of the 1983 TSA Plan modified the parties' original agreement and, therefore, must control the analysis. In support of this argument, Appellants rely on a section of the Board's bylaws that states, in pertinent part, the following:

> A proposed alteration, amendment, repeal, or new policy must be submitted in writing to the Board, for review by the superintendent and the public, at a regular monthly meeting with a copy for each member. No proposed alteration, amendment, repeal, or new policy shall be voted upon until the next regular monthly meeting subsequent to the meeting at which the proposal is offered. In order for any proposed alteration, amendment, repeal[, or] new policy to become effective, it must receive the affirmative vote of a majority of the Board members. No such alteration, amendment, repeal, [or] new policy shall be retroactive, but shall become operative at the time such affirmative vote is made or at such time in the future as the Board may designate.

> . . .

> *Any action of the Board in apparent conflict with provisions of these policies shall constitute a suspension of the operation and effect of that conflicting policy to the extent and for such time as may be required by the action*

14

> *taken by the Board. However, such actions shall not otherwise constitute an amendment of these policies.*

(Emphasis supplied.) This so-called "policy on policies," Appellants argue, acts as a reservation of rights,[6] thereby giving the subsequently enacted TSA Plan superiority over the 1982 Amendment. We disagree.

By the bylaw's plain language, when the Board does not follow its specific protocols concerning policy adoption, then a previously enacted bylaw cannot be amended by a later, non-conforming act of the Board. Here, the Board followed the required protocols when it enacted the 1982 Amendment — i.e., the amendment was proposed, in writing, at a regular monthly meeting, and approved by a majority vote of the Board at the next regular monthly meeting. However, the Board did not follow these protocols when it adopted

---

[6] Appellants argue that Appellees' annual written contracts also contain a reservation of rights by which Appellees agreed to abide by the Board's policies "in effect at the time of the execution of this contract or hereafter enacted or amended." To the extent this could be interpreted as a reservation of rights, it is undisputed that the two-year notice provision of the 1982 Amendment was in effect when Appellees signed their annual contracts in 2009, and it was not amended until June 2010.

the 1983 and 2003 versions of the TSA Plan. As discussed above, each version of the TSA Plan was adopted at the same meeting at which it was presented and was not placed on the table until the next monthly Board meeting as required. Moreover, unlike the 1982 Amendment, the TSA Plan was never proposed as an amendment to the Board's bylaws.

To the extent that the "policy on policies" provides for the suspension of conflicting provisions, suspension is only allowed "to the extent and for such time as may be required . . . ." Simply put, the language of the "policy on policies" provides for a temporary override of a Board policy; however, there are no circumstances under which a temporary action permanently amends the Board's bylaws and policies. Here, the TSA Plan was not a temporary action. Moreover, the Board had ample time to follow the required protocols and formally amend its bylaws when it adopted the TSA Plan, but it did not do so. Based upon the language of the Board's own bylaws, the TSA Plan's provision providing for the termination or suspension of the plan "at any time" cannot amend the two-year

16

notice provision embodied in the bylaws by way of the 1982 Amendment.

Finally, Appellants argue that, to the extent that the retirement plan was a part of Appellees' employment contracts, Appellees did not have a vested right in the contract benefits because the TSA Plan states that it can be amended at any time.[7] However, because we have determined that the 1982 Amendment, and not the TSA Plan, controls as to the two-year notice provision, this argument fails. While it may be that many terms forming the employer-employee arrangement are subject to unilateral change by the Board, as to the reduction of funding, the Board placed express contractual limits on its ability to reduce funding to the alternative benefits plan.

4. *Conclusion*.

---

[7] One amicus curiae supporting Appellants also raised an argument that the two-year notice provision is void because it violates the general principle opposing the impediment of free legislation. See generally *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980). Because this issue was not raised by the parties or ruled upon by the trial court, we do not address it.

Based on the foregoing, we agree with the Court of Appeals, albeit for somewhat different reasons, that the trial court erred in granting Appellants' motion for summary judgment and in denying Appellees' motion for summary judgment on the issue of liability for breach of contract.[8]

*Judgment affirmed. All the Justices concur, except Peterson, Bethel, and Ellington, JJ., disqualified.*

DECIDED OCTOBER 21, 2019 – RECONSIDERATION DENIED NOVEMBER 14, 2019.
Certiorari to the Court of Appeals of Georgia — 346 Ga. App. 108.

---

[8] Because we affirm the judgment of the Court of Appeals, we need not address Appellees' other arguments in favor of that result.

*Lawrence & Bundy, Allegra J. Lawrence, Thomas R. Bundy III, Leslie J. Bryan, Lisa M. Haldar; Robbins Ross Alloy Belinfante Littlefield, Joshua B. Belinfante*, for appellants.

*Barnes Law Group, Roy E. Barnes, John F. Salter, Jr.; Bondurant, Mixson & Elmore, Michael B. Terry, Jason J. Carter, Naveen Ramachandrappa*, for appellees.

*Kelly Jean L. Pridgen, Larry W. Ramsey, Jr., G. Joseph Scheuer; W. Brooks Stillwell III, Jennifer N. Herman; Brinson Askew Berry Seigler Richardson & Davis, J. Anderson Davis, Lee B. Carter; Gwin C. Hall, Caroline E. Porter; Harben, Hartley & Hawkins, Phillip L. Hartley; Donald C. English; Michael T. McGonigle, Matthew M. Pence; Williams Oinonen, Mario B. Williams, Julie J. Oinonen*, amici curiae.